REVISED JULY 17, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 99-50635**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**GUILLERMO DELGADO, also known as Enrique Hank Cervantes;**
**BARRY WAYNE ALBURTIS,**

**Defendants-Appellants.**

_____

Appeals from the United States District Court
For the Western District of Texas
_____

June 26, 2001

Before JONES and DeMOSS, Circuit Judges, and BARZILAY,[*] District Judge.

DeMOSS, Circuit Judge:

Defendants-Appellants Guillermo Delgado and Barry Wayne Alburtis appeal their convictions and sentences for various charges including conspiracy to distribute and possess with intent to

---

[*]Judge of the U.S. Court of International Trade, sitting by designation.

distribute in excess of 1,000 kilograms of marijuana.  For the following reasons, we affirm both Delgado's and Alburtis' convictions and sentences.

## I. BACKGROUND

On June 17, 1998, a grand jury indictment was returned against Delgado and Alburtis (cause number SA98-CR-233).  Delgado and Alburtis were both charged with conspiracy to distribute and possession with intent to distribute in excess of 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) between January 1994 and February 1995 [Count One]. Moreover, Alburtis was charged with aiding and abetting others with possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) on or about December 21, 1994 [Count Two]; conspiracy to launder money in violation of 18 U.S.C. § 1956(H) beginning on or about January 1995 and continuing for approximately six months thereafter [Count Three]; and substantive money laundering in violation of 18 U.S.C. § 1956(a)(1)(A) [Counts Four, Five and Six].

Both Delgado and Alburtis were found guilty on each of their respective counts after jury trials.  Delgado received 235 months imprisonment, five years of supervised release, and a $50 special assessment.  Alburtis was sentenced to a term of 365 months for both Counts One and Two, and 60 months each for Counts Three

2

through Six.  All the terms were to run concurrently and were to be followed by five years of supervised release.

At the time of his prosecution, Delgado was serving a sentence of 78 to 97 months in federal prison for conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 (cause number EP-97-CR-312-DB).  That sentence related to a 1997 offense, while Delgado's second prosecution, which is the subject of his appeal, related to a conspiracy between 1994 and 1995. Thus, his earlier conviction for which he was serving time actually related to a later offense.  The sentence for the second prosecution is to run concurrent with the 78 to 97 month term for the prior prosecution.

Similarly, Alburtis was in jail when the multiple-count indictment was levied against him.  At the time of his second prosecution, which is the subject of his appeal, Alburtis had been serving a 120-month term for conspiracy to distribute and to possess with intent to distribute more than 1000 kilograms of marijuana and for a substantive money laundering violation (cause number SA-93-CR-285).  He had been indicted in September 1993 for those two counts (and others) and had plead guilty to those two counts in September 1994.  Because he was on bond pending designation, he did not go to prison for the first prosecution until February 1995.  The 365-month term for the second prosecution is to run consecutive to his first sentence of 120 months.

## II. DISCUSSION

On appeal, both defendants raise a number of issues. We review each defendant's issues separately and in turn.

A.    Delgado's Appeal

In his brief, Delgado essentially raises two issues. First, Delgado maintains that the conspiracy alleged in cause number SA-98-CR-233 and the one that was alleged in cause number EP-97-CR-312-DB (for which he was serving time) are part of one long-term and extended conspiracy. Hence, he complains that his conviction and sentence for the conspiracy alleged in cause number SA-98-CR-233 violate the Double Jeopardy Clause of the Fifth Amendment because he has already been convicted and sentenced for his role in the drug conspiracy. Second, Delgado contends that the government failed to produce material exculpatory information in violation of *Brady v. Maryland*, 83 S. Ct. 1194 (1963), and the district court's pretrial order.

We first note that whether a prosecution violates the Double Jeopardy Clause of the Fifth Amendment is a question of law and is reviewed de novo. *United States v. Deshaw*, 974 F.2d 667, 669 (5th Cir. 1992). We will accept the factual findings of the district court unless they are clearly erroneous. *Id.* If a defendant comes forward with a prima facie nonfrivolous double jeopardy claim, then the burden of establishing that the indictments charge separate crimes is on the government. *United States v. Nichols*, 741 F.2d

4

767, 770-71 (5th Cir. 1984) (quoting **United States v. Stricklin**, 591 F.2d 1112, 1118 (5th Cir. 1979)). "The defendant can establish a *prima facie* non-frivolous double jeopardy claim through indictments or other documentation to establish the earlier charges, or even through his own testimony." **United States v. Ellender**, 947 F.2d 748, 759 (5th Cir. 1991) (citing **Stricklin**, 591 F.2d at 118).

The government maintains that Delgado has failed to make out a prima facie case. It observes that Delgado did not file a special plea raising the double jeopardy issue, but raised the issue only at sentencing. In addition, the government asserts that Delgado has not tendered a copy of his indictment in the prior conviction, that the indictment is not in the record, and that he has not presented any evidence connecting the 1997 conviction with the instant case.

Reviewing the record, we agree with the government that Delgado has failed to establish his prima facie case. Although Delgado suggested that the conspiracy alleged in cause number SA-98-CR-233 and the one that was alleged in cause number EP-97-CR-312-DB were the same during the trial, he never directly raised a double jeopardy claim before the district court. Even his objection to the pre-sentence report, which apparently forms the basis for his preservation of error, merely argued that the prior 1997 conviction should be defined as a related case and that,

therefore, three criminal history category points should not be assigned for that conviction. Consistent with that approach, Delgado did not proffer a prima facie case for shifting the burden to the government on the double jeopardy issue. A limited amount of evidence, such as the judgment of conviction, supported the fact that Delgado had been convicted in 1997 of a conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, but Delgado failed to proffer the indictment for the 1997 conviction or to testify with respect to that conviction.[1] Without the 1997 conviction's indictment or testimony about that indictment, we are unduly hampered in determining whether the government in cause number SA-98-233 sought to prosecute Delgado for the same offense as that stated in the 1997 indictment or to obtain multiple punishments for the 1997 offense. By not presenting the specific circumstances surrounding his 1997 conspiracy charge and the facts supporting it, we conclude that Delgado has not satisfied his burden and, consequently, find his double jeopardy claim unavailing.

Delgado's second point of error concerns the government's alleged **Brady** violation and failure to comply with the district court's discovery order. He maintains that the government had information from the debriefing of certain individuals that would have demonstrated that the conspiracy charged in cause number SA-

---

[1]At trial, Delgado rested without presenting any testimony.

98-233 and the conspiracy for which he was charged and convicted in 1997 were the same thing. Specifically, the debriefing information indicated that some of the witnesses who testified about the conspiracy alleged in SA-98-233 may have been involved in the 1997 conspiracy for which Delgado was previously convicted.

According to the government, Delgado never raised this issue before the trial court. Furthermore, the government argues that nothing in the record contradicts its pre-trial representation that discoverable evidence and *Brady* material were provided to Delgado. Even if the information were not divulged, the government believes that nothing prejudicial occurred. It asserts that the result would not have been different because the debriefing statements about some of the witnesses only showed that those witnesses were still involved in the drug business in 1997, not that the drug conspiracy in 1997 was somehow the same as the one charged in cause number 98-SA-233.

Under *Brady v. Maryland*, exculpatory evidence is discoverable by the defendant where it is material to guilt or punishment. Information is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different. *See United States v. Maloof*, 205 F.3d 819, 827 (5th Cir.), *cert. denied*, 121 S. Ct. 176 (2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ellender*, 947 F.2d at 756 (quoting *United States v.*

7

*Bagley*, 105 S. Ct. 3375, 3383 (1985)) (internal quotation marks omitted).

Here, even if the government did not provide the debriefing statements to Delgado, we do not believe that those statements were material. Delgado's apparent basis for asserting his *Brady* claim is his belief that knowledge that some of the witnesses to the conspiracy in cause number SA-98-233 were possibly involved in the 1997 conspiracy would have induced the jury to acquit him based on double jeopardy. A double jeopardy claim, however, is a question of law that is properly the province of the district court, not the jury.[2] Thus, we reject the argument that the debriefing statements were *Brady* material, which should have been provided to Delgado. Accordingly, Delgado's conviction and sentence are affirmed.

B. Alburtis' Appeal

Like his co-defendant, Alburtis initially challenges his conviction in cause number SA-98-CR-233 for conspiracy to distribute and possession with intent to distribute in excess of 1000 kilograms of marijuana, insisting that it violates the Double Jeopardy Clause of the Fifth Amendment. He contends that the 1998 indictment in cause number SA-98-CR-233 and the 1993 indictment, for which he was already convicted and serving time, pertain to the same conspiracy. Second, Alburtis contests the sufficiency of the

_____

[2]As previously noted, we do not believe that Delgado has established a prima facie case that the two conspiracies were the same.

8

evidence to support his convictions for aiding and abetting others with possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) on or about December 21, 1994 [Count Two]; and substantive money laundering in violation of 18 U.S.C. § 1956(a)(1)(A) [Counts Four, Five and Six]. Third, he avers that the government constructively amended Counts Three through Six of the indictment. Fourth, Alburtis asserts that the district court failed to afford him the right of allocution secured by Federal Rule of Criminal Procedure 32(c)(3)(C) prior to imposing his sentence. Fifth, he charges that the government violated 18 U.S.C. § 201(c)(2), the federal gratuity statute. Finally, Alburtis raises in a supplemental brief an error predicated on *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000).[3] We review Alburtis' issues in turn.[4]

1.  *Double Jeopardy*

In contrast to Delgado, Alburtis specifically raised his double jeopardy claim in a pretrial motion before the district court, and the particulars of the conspiracy charge alleged in the 1993 indictment and the basis for that charge were presented to

---

[3]Alburtis moved for leave to file the supplemental brief, which is hereby granted.

[4]Alburtis also maintains in a separate section of his brief that the district court clearly erred in determining his sentence. The argument presented is nothing more than a challenge aimed to preserve his objections to the sentence calculation if any of his convictions are reversed. Thus, there is no need to separately address those issues.

that court. Consequently, the government does not contend that Alburtis did not establish his prima facie case, and we may proceed to whether the government has satisfied its burden of establishing by a preponderance of the evidence that the 1993 and the 1998 indictments charge separate crimes. *See **Deshaw***, 974 F.2d at 670.

In ***Blockburger v. United States***, 52 S. Ct. 180 (1932), the Supreme Court laid out the general test for resolving issues of double jeopardy. Under ***Blockburger***, double jeopardy concerns are not raised if each crime requires an element of proof not required by the other crimes charged. ***United States v. Sharpe***, 193 F.3d 852, 863 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 1202 (2000). In other words, ***Blockburger*** bars the conspiracy count alleged in the 1998 indictment unless the government can prove by a preponderance of the evidence that the 1998 conspiracy count and the 1993 conspiracy count are factually distinct. ***Deshaw***, 974 F.2d at 673. That is colored by the fact that "[t]he essential issue in the double jeopardy analysis respecting conspiracy is whether one, or more than one, agreement existed." ***Id.*** To determine whether the alleged conspirators entered into more than one agreement, we evaluate five factors: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each

10

case; and 5) places where the events alleged as part of the conspiracy took place. *Id.* at 673-74 (citing *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978)[5]). "No one factor of the *Marable* analysis is determinative; rather all five factors must be considered in combination." *United States v. Cihak*, 137 F.3d at 252, 258 (5th Cir. 1998).

Applying the *Marable* factors, we conclude that the government has satisfied its burden of establishing that the 1993 and the 1998 indictments charge separate crimes. The two indictments address different time periods. The 1993 indictment concerned a conspiracy that ranged from 1985 to 1993, while the 1998 indictment involved a conspiracy from January 1994 to February 1995. In fact, the 1998 indictment concentrated on a conspiracy that Alburtis partook in after he was arrested under the 1993 indictment and released on

---

[5]Although a panel of this Court questioned the vitality of the evidence-based standard for measuring double jeopardy claims in *United States v. Fisher*, 106 F.3d 622, 633 n.11 (5th Cir. 1997), *abrogated on other grounds*, *Ohler v. United States*, 120 S. Ct. 1851, 1853 (2000), the five-factor test for determining whether separate conspiracies were involved remains a viable part of the analysis with respect to double jeopardy claims involving conspiracies. *See United States v. Cihak*, 137 F.3d 252, 258 (5th Cir. 1998). Even *United States v. Rodriguez*, 612 F.2d 906 (5th Cir. 1980) (en banc), *overruled on other grounds*, *United States v. Michelena-Orovio*, 719 F.2d 738, 757 (5th Cir. 1983) (en banc), the case that *Fisher* relied upon to challenge the *Marable* test, was a limited holding and did not directly overrule *Marable*. *See Rodriguez*, 612 F.2d at 919.

bond pending further proceedings.[6]  Furthermore, other than Alburtis, there was no overlap between the individuals in the 1993 and the 1998 indictments.  None of the individuals indicted with Alburtis in the 1998 indictment were charged in the 1993 indictment, and vice versa.  Although, as Alburtis suggests, the affidavits in support of the search warrants in both SA-93-CR-285 and SA-98-CR-233 identified some of the same individuals as possible conspirators, the vast majority of the individuals, including many of the key conspirators, were named in only one of the affidavits.  And the evidence does not reveal that the sources of marijuana for the 1985 to 1993 conspiracy were the same as the ones for the 1994 to 1995 conspiracy.  Admittedly, the statutory offenses charged in the two indictments both related to conspiracy to distribute and possess with intent to distribute more than 1000 kilograms of marijuana, but the two conspiracy charges specifically targeted two different time periods and had dissimilar recitations of where the conspiratorial activities occurred.  For example, the 1993 indictment specifically mentioned the Western District of Texas, the Northern District of Texas, the District of New Mexico,

---

[6]The government maintains that, because of Alburtis' arrest under the 1993 indictment, even if the 1998 indictment pertained to the continuation of the earlier conspiracy outlined in the 1993 indictment, "further operation of the old conspiracy after being charged with that crime becomes a new offense for purposes of a double jeopardy claim." *United States v. Stricklin*, 591 F.2d 1112, 1121 n.2 (5th Cir. 1979).  That statement from *Stricklin* is dicta, and we do not address the merits of that statement in the present case.

the Middle District of Pennsylvania, and "divers[e] other places." The 1998 indictment was less specific, only stating the Western District of Texas and "divers[e] other places." The differences with respect to the regions noted in the indictments may be due to the fact that the scope of the activities and the locations concerning the two conspiracies do not generally overlap. The 1993 indictment concerned large-scale marijuana smuggling from Mexico into El Paso, with subsequent distribution to various locations, mostly in Texas. The 1998 indictment also involved marijuana smuggling into El Paso, but the ultimate destinations and the individuals transporting and distributing, and quite possibly providing, the drugs were different. Contrary to Texas locations, the 1998 indictment concerned conspiratorial activity in Phoenix and Oklahoma City. Accordingly, the combination of *Marable* factors leads us to believe that the 1993 and 1998 indictments charged separate crimes and that there was no double jeopardy violation.

  2.  *Sufficiency of the Evidence*

Alburtis makes two sufficiency of the evidence challenges. We review a district court's denial of a motion for judgment of acquittal de novo. ***United States v. Myers***, 104 F.3d 76, 78 (5th Cir. 1997). The jury's verdict will be affirmed if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt. ***Id.*** In assessing the sufficiency of the evidence, we do not evaluate the

13

weight of the evidence or the credibility of the witnesses, but view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict. *Id.* at 78-79.

In the present case, however, the government argues that Alburtis failed to renew his motion after he presented his evidence. "Where a defendant fails to renew his motion at the close of all the evidence, after defense evidence has been presented, he waives his objection to the earlier denial of his motion." *United States v. Daniel*, 957 F.2d 162, 164 (5th Cir. 1992). Although Alburtis indicates that he made his Rule 29 motion after the government closed its case and after the close of all the evidence, the part of the record that Alburtis refers to as preserving his objection actually concerns Delgado's renewed motion for judgment of acquittal. Because Alburtis himself failed to renew his motion and, thus, waived any objection to the sufficiency of the evidence, our review is "limited to determining whether there was a manifest miscarriage of justice, that is, whether the record is 'devoid of evidence pointing to guilt.'" *Id.* (quoting *United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989)).

Alburtis first contests the sufficiency of the evidence to support his conviction for aiding and abetting others with possession with intent to distribute more than 100 kilograms of

14

marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) on or about December 21, 1994 [Count Two]. Count Two of Alburtis' 1998 indictment alleges:

> That on or about December 21, 1994, in the Western District of Texas, Defendants
> BARRY WAYNE ALBURTIS, AND
> ROBERT BARRAGAN,
> aided and abetted others known and unknown to the Grand Jury to unlawfully, knowingly and intentionally possess in excess of 100 kilograms of marijuana, a Schedule I Controlled Substance, with the intent to distribute the same, in violation of Title 21, United States Code, Sections 841(a)(1) and Title 18, United States Code, Section 2.

Both the government and Alburtis agree that this count refers to the transportation of marijuana from El Paso to Oklahoma City, i.e., the Oklahoma City load. Alburtis argues that there is insufficient evidence to support Count Two because there is insufficient evidence to show that he directed either Ronald Levrier, the purchaser of the marijuana, or Bob Barragan, the representative of the source of the marijuana, Ruben Cervantes. Alburtis contends that the evidence, at most, indicates that he may have facilitated the overall scheme when he introduced Barragan to Ronald Levrier months before any business occurred.

The essential elements of possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841 are 1) knowledge, 2) possession, and 3) intent to distribute the controlled substances. *United States v. Thomas*, 120 F.3d 564, 569 (5th Cir. 1997). If a defendant is convicted for aiding and

15

abetting, actual physical possession is not necessary. *United States v. Chavez*, 947 F.2d 742, 745 (5th Cir. 1991). Instead, the government must establish that the defendant became associated with, participated in, and in some way acted to further the possession and distribution of the drugs. *Id.* "[T]o aid and abet, a defendant must share in the intent to commit the offense as well as play an active role in its commission." *United States v. Lombardi*, 138 F.3d 559, 561 (5th Cir. 1998). Often, the evidence that supports a conspiracy conviction also supports an aiding and abetting conviction. *United States v. Drones*, 218 F.3d 496, 505 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1095 (2001).

Reviewing what was presented at trial with full knowledge of the applicable law pertaining to possession with intent to distribute and aiding and abetting, we do not believe that the trial was devoid of evidence pointing to guilt. Undoubtedly, Alburtis helped introduce Levrier to the source of the Oklahoma City load. Moreover, Alburtis was to receive a commission on that transaction. Although Alburtis insists that he did not introduce Levrier to the others specifically to do the Oklahoma City load and that the commission for that load was merely a continuation of the general commission system established for all drug transactions, and not just the Oklahoma City load, the evidence showed that when problems arose regarding the Oklahoma City load, Alburtis attended

16

a meeting with the parties involved to smooth things out.[7] Combining that fact with Alburtis' role in introducing the Oklahoma City load parties to each other and with his large financial stake in that drug transaction, we see no manifest miscarriage of justice in concluding that Alburtis associated with, participated in, and in some way acted to further the possession and distribution of marijuana on December 21, 1994, in the Western District of Texas.

Alburtis' other sufficiency of the evidence challenge relates to his convictions for substantive money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) [Counts Four, Five and Six].[8] Count Four of the 1998 indictment alleges that on or about February 8, 1995, Alburtis "aided and abetted by others, did knowingly and willfully attempt to conduct a financial transaction affecting interstate and foreign commerce, to-wit: the attempted transfer and delivery of $432,000.00 in United States currency from another individual, which involved the proceeds of a specified unlawful activity." Count Five is a similar charge but pertains to the transfer and delivery of $250,000 on or about March 2, 1995. Likewise, Count Six is another substantive money laundering charge concerning the transfer and delivery of approximately $50,000 to Barragan sometime in the spring of 1995. To prove money laundering

---

[7]Additionally, when the police took $432,000 of the money that Levrier was to pay Cervantes, Levrier notified Alburtis about the loss.

[8]Counts Five and Six also refer to the aiding and abetting statute, 18 U.S.C. § 2.

17

under 18 U.S.C. § 1956(a)(1)(A)(i), the government must establish that the defendant 1) conducted or attempted to conduct a financial transaction, 2) which the defendant then knew involved the proceeds of unlawful activity, 3) with the intent to promote or further unlawful activity. *United States v. Puig-Infante*, 19 F.3d 929, 937 (5th Cir. 1994).

The $432,000 noted in Count Four resulted from the sale in the Northeast of the Oklahoma City load.  Levrier assigned that money to Ed Moran to have him transport it to Texas.  Ultimately, the police stopped Moran and seized the money.  Alburtis contends that the government did not adduce any evidence that he ever handled, transported, or in any other way attempted to dispose of the $432,000, in violation of § 1956(a)(1)(A)(i).

We disagree.  The evidence revealed that the $432,000 was the product of the Oklahoma City load and that it was being transported to Texas to pay off debts arising from that drug transaction. According to Levrier, the money was to go to Cervantes, the drug source, in El Paso.  At a meeting to discuss some problems associated with the drugs from the Oklahoma City load, Alburtis had previously assured Cervantes of payment.  Johnny Guy Aaron also testified that Levrier, who was going to rendezvous with Moran and the money in San Antonio, intended to meet with Alburtis concerning the money.  Indeed, Alburtis had some interest in the $432,000 because it was a part of the Oklahoma City load, from which he was

18

ultimately supposed to receive a commission. And Alburtis was with Levrier at the Church's Chicken restaurant the day after the money's seizure when Aaron met up with Levrier to discuss the circumstances surrounding the seizure. According to Aaron, Alburtis told Levrier that there was a snitch amongst them. All of those facts support an inference that Alburtis knew about the illegal nature of the proceeds and that he understood that the proceeds were to pay off debts from the Oklahoma City load, particularly the source of the drugs with whom the parties sought to maintain a relationship. Moreover, Alburtis' scheduled meeting with Levrier in San Antonio about the money, his involvement with the individuals associated with the money's transportation subsequent to its seizure, his own interest in the funds, and his assurance to Cervantes that Cervantes would be paid support an inference that Alburtis knowingly and willfully attempted to conduct a financial transaction in violation of § 1956(a)(1)(A)(i) and preclude a determination that the record is devoid of evidence pointing to guilt.

With respect to Count Five, Alburtis was in jail at the time of the transaction. Count Five pertained to commissions that Alburtis was expecting from the drug transactions. Alburtis had instructed Levrier to give his commissions to Mark Harris, who was to hold those commissions for the benefit of Alburtis and his wife. Alburtis told Harris to provide monthly payments to his wife. Ultimately, Levrier delivered about $250,000 to Harris in March

1995.  Over the next few months, Harris paid Alburtis' wife some of the money through money orders and cash.

Alburtis contends that all of the aforementioned facts are insufficient to convict him of Count Five, even for aiding and abetting.  He asserts that the government's evidence merely shows that he created the circumstances that permitted the money laundering to occur on March 2, 1995, but that the evidence does not show that he affirmatively or consciously assisted in the crime.

"To prove that a defendant aided and abetted money laundering, the government must show that the defendant 'associated himself with the unlawful financial manipulations, that he participated in them as something he wished to bring about, and that he sought, by his actions, to make the effort succeed.'"  *United States v. Willey*, 57 F.3d 1374, 1383 (5th Cir. 1995) (quoting *United States v. Termini*, 992 F.2d 879, 881 (8th Cir. 1993)).  A defendant associates himself with the unlawful financial manipulations if he shares in the criminal intent of the principal.  *United States v. Sorrells*, 145 F.3d 744, 753 (5th Cir. 1998).  And he participates in those manipulations if he engages in some affirmative conduct designed to aid the conduct.  *Id.*

Contrary to Alburtis' assertions, he did not merely create the circumstances for the money laundering to occur. Alburtis knew that he would soon receive proceeds from illegal activity. Because he could not receive them while he was in prison, Alburtis affirmatively directed Levrier to deposit any sums with Harris and instructed Harris to pay his wife in monthly installments. The lack of knowledge regarding the specific amount of money and the specific date of the transaction does not alter the fact that Alburtis' affirmative instructions facilitated the money laundering and caused the transaction to occur. Therefore, we see no manifest miscarriage of justice requiring reversal.

Finally, Count Six alleges that in the spring of 1995, Alburtis and Barragan conducted a financial transaction in the amount of $50,000, in the form of a delivery from an individual, i.e., Harris, to Barragan, which were the proceeds of an unlawful activity, in violation of § 1956(a)(1)(A)(i) and § 2. The evidence indicates that the money constituted some of the $250,000 Harris received on behalf of Alburtis and his wife. Before going to jail, Alburtis introduced Harris to Barragan to provide a method of paying Cervantes, the drug source, while Alburtis was in jail. As previously noted, Barragan represented Cervantes. Alburtis had a keen interest in making sure that Cervantes received his money because Alburtis wanted to maintain his reputation among his Mexican drug sources.

Similar to his challenge to Count Five, Alburtis argues that

21

apart from evidence indicating that he introduced Harris to Barragan, the government has not shown that he was aware of the $50,000 transfer or that he committed any affirmative act related to this crime. And as with Count Five, we do not find the record devoid of evidence pointing to guilt. Alburtis took the affirmative step of arranging the meeting between Harris and Barragan to ensure that future transfers of money would take place. Alburtis knew that the money Harris received was from illegal proceeds and that it was to go to Cervantes to further the drug enterprise. Without Alburtis' instructions, the delivery from Harris to Barragan would not have occurred. Accordingly, there was no manifest miscarriage of justice, and Alburtis' Count Six conviction is affirmed.

### 3. Constructive Amendment

In his third issue, Alburtis' maintains that the government constructively amended Counts Three through Six of the indictment. Counts Three through Six of the 1998 indictment allege that Alburtis conspired to, and did commit, money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), the "promotion" prong of the statute. That statutory provision reads:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
> (A)(i) with the intent to promote the carrying on of specified unlawful activity . . .
> shall be sentenced to a fine of not more than $500,000 or

22

twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

Although the government charged Alburtis under this promotion prong, Alburtis contends that the government adduced substantial evidence at trial indicating that he violated the money laundering statute by structuring transactions to avoid a reporting requirement, contrary to 18 U.S.C. § 1956(a)(1)(B)(ii).[9] For example, the postal inspector testified about post office procedures with respect to reporting obligations and money orders. Harris testified about how Alburtis told him to provide funds to Alburtis' wife via money orders purchased from the post office. Moreover, Harris stated that Alburtis told him to structure the transaction in such a way that no reporting would have to be done. Finally, the prosecutor made certain comments that Alburtis insists was an attempt to convict Alburtis for money laundering under the reporting requirement prong as opposed to the promotion prong that

---

[9]Section 1956(a)(1)(B)(ii) provides:
Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
  (B) knowing that the transaction is designed in whole or
  in part-
    (ii) to avoid a transaction reporting requirement
    under State or Federal law,
shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

was stated in the indictment.[10]

"'The Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment.'" *United States v. Threadgill*, 172 F.3d 357, 370 (5th Cir. 1999) (quoting *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir.1991)), *cert. denied*, 120 S. Ct. 172 (1999). After an indictment is returned, the charges may not be amended or broadened except by the grand jury. *Stirone v. United States*, 80 S. Ct. 270, 272-74 (1960). "'[A] constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis

---

[10]The prosecutor charged:

Look at the money orders. Look how they're structured. And I say structured. You heard the testimony of the postal inspector. He said you can buy up to so many on a certain day at any one post office and if you do more than that, the IRS is going to find out about it. So you gotta go to different post offices and structure these. You gotta do it in different places so you don't cause the filing of that transaction report because if you're dealing in proceeds of marihuana, if you're dealing in currency, you don't want the Government to know about it or you're going to wind up in a federal courtroom just like these two defendants.

. . . .

. . . .

Look at this exhibit, 342 or 341, whatever it is. Compare this writing. Compare it. That's Barry Alburtis that's putting his wife's name on those [postal money orders] before he goes to prison. That's Barry Alburtis that's completing those money orders that he taught Mark Harris how to structure. That's money laundering. That's a part of the money laundering conspiracy that Barry Alburtis was – is charged with. It's the same money laundering conspiracy that Mark Harris was convicted of up in Austin.

24

that effectively modifies an essential element of the offense charged . . . .'" **United States v. Parkhill**, 775 F.2d 612, 615 (5th Cir. 1985) (quoting **United States v. Young**, 730 F.2d 221, 223 (5th Cir. 1984)). If a trial court constructively amends an indictment, that is reversible error. **Stirone**, 80 S. Ct. at 274. Here, however, Alburtis raises constructive amendment for the first time on appeal. As a result, we review that claim for plain error. "Under that doctrine, a defendant must show (1) the existence of actual error; (2) that the error was plain; and (3) that it affects substantial rights." **Threadgill**, 172 F.3d at 370.

Reviewing the record, we see no plain error requiring reversal. At trial, there was substantial evidence supporting the convictions for Counts Three through Six, and the instructions delivered to the jury specifically charged violations of § 1956(a)(1)(A)(i), not § 1956(a)(1)(B)(ii). Admittedly, the prosecutor's closing argument, and a very small part of the testimony, discussed the structuring of money orders. But a thorough review of the prosecutor's closing remarks shows that the basis for the prosecutor's statements was to demonstrate that Alburtis was involved with the money laundering counts, even though he was in prison. The prosecutor never prodded the jury to return a money laundering conviction predicated on the reporting requirement theory. Accordingly, we do not believe that the jury was permitted to convict Alburtis upon a factual basis that

25

effectively modified an essential element of the offenses charged in the indictment.

### 4. *Right to Allocute*

Alburtis' fourth issue refers to the district court's alleged failure to afford him the opportunity to allocute prior to imposing sentence. Federal Rule of Criminal Procedure 32(c)(3)(C) secures a defendant's right to allocute. Under that rule, before imposing sentence, the court must "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." Failure to afford a defendant his allocution rights necessitates remand and is not reviewed for harmless error. *United States v. Myers*, 150 F.3d 459, 463 (5th Cir. 1998).

Here, we confront a unique set of circumstances. At a morning sentencing hearing, the district court orally pronounced sentence without addressing Alburtis to determine whether he wanted to make a statement. Thereafter, the parties realized their mistake, and in the afternoon, Alburtis was again brought before the district court to be afforded his right to allocute under Rule 32(c)(3)(C). The district court then reimposed the same sentence that was meted out in the morning.

26

Under this circuit's case law, if the district court had failed to do the resentencing, then Alburtis' sentence would have had to have been vacated and remanded back to the district court. *See* **Myers**, 150 F.3d at 463. But in the instant case, a resentencing occurred, and it provided Alburtis his right to allocute. Thus, the determinative issue is whether that resentencing was proper.

A district court's ability to resentence a defendant is generally limited and available only in discrete circumstances. Federal Rule of Criminal Procedure 35(c), however, allows a court, acting within 7 days after imposition of sentence, to "correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." Although Rule 35(c) does not explicitly state so, a Rule 35(c) correction may occur sua sponte. *See* Fed. R. Crim. P. 35 advisory comm. notes ("The subdivision does not provide for any formalized method of bringing the error to the attention of the court and recognizes that the court could *sua sponte* make the correction."); *see also* **United States v. Colace**, 126 F.3d 1229, 1231 (9th Cir. 1997); **United States v. Morillo**, 8 F.3d 864, 868 n.5 (1st Cir. 1993). The record is not clear as to whether the district court resentenced sua sponte or if it even relied on Rule 35. But Rule 35(c) was the most appropriate authority under which the district could resentence Alburtis and correct the clear error of failing to afford him his right to

27

allocute. And whether the district court's decision to resentence was done sua sponte or after conference with the parties, who may have orally moved for correction, is not determinative. *See Morillo*, 8 F.3d at 868 n.5 (holding that Rule 35(c) corrections may occur sua sponte or in response to post-judgment motions). Thus, we find that the district court properly resentenced Alburtis to afford him his right to allocu0te and conclude that Alburtis' fourth issue is without merit.

*5.     18 U.S.C. § 201(c)(2)*

Alburtis' fifth issue concerns whether the government violated 18 U.S.C. § 201(c)(2), the federal gratuity statute. Most of the accomplice-witnesses who testified against Alburtis received leniency in exchange for their testimony. They were first provided a downward departure under U.S.S.G. § 5K2.1 and then through a motion for further reduction under Federal Rule of Criminal Procedure 35. Referring to **United States v. Singleton**, 144 F.3d 1343 (10th Cir. 1998), *rev'd en banc*, 165 F.3d 1297 (10th Cir. 1999), Alburtis asserts that such leniency for testimony violated the anti-gratuity provisions of 18 U.S.C. § 201(c)(2).

The Tenth Circuit, however, reversed **Singleton** in an en banc session. Notwithstanding that reversal, Alburtis attempts to distinguish his case from the en banc decision by arguing that **Singleton** did not address whether the government violates § 201(c)(2) when it files a Rule 35 motion for reduction in

28

exchange for a defendant's testimony. Whether the leniency is provided pursuant to Rule 35 or § 5K2.1 is a distinction without merit. We have repeatedly rejected the argument that the government violates the anti-gratuity provisions of 18 U.S.C. § 201(c)(2) by offering leniency to co-defendants in exchange for testimony. *United States v. Smith*, 203 F.3d 884, 894 (5th Cir. 2000); *United States v. Haese*, 162 F.3d 359, 366-67 (5th Cir. 1998). Accordingly, Alburtis' challenge predicated on the anti-gratuity provisions of 18 U.S.C. § 201(c)(2) is unavailing.

6. *Apprendi* Error

In his supplemental brief, Alburtis contends that we should vacate his sentences for Counts One and Two and remand his case for a new sentencing hearing in light of *Apprendi v. New Jersey*. *Apprendi* held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. *Apprendi*, 120 S. Ct. at 2363-64. Alburtis asserts, and the government concedes, that his 365-month sentences for Counts One and Two, which are to run concurrently, exceeded the statutory maximum penalty for a marijuana offense under 21 U.S.C. § 841(b)(1)(C) and (D). Because those sentences exceeded the statutory maximums, he maintains that the issue of drug quantity with respect to those counts should have been submitted to the jury.

"[I]f the government seeks enhanced penalties based on the amount of the drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt." *United States v. Doggett*, 230 F.3d 160, 164-65 (5th Cir. 2000). Here, the indictment charged the amount of marijuana involved, but the jury instructions failed to include the issue of quantity. Nonetheless, because Alburtis failed to object to the district court as to the absence of drug quantity in the jury instructions, we review for plain error. *United States v. Slaughter*, 238 F.3d 580, 583 (5th Cir. 2001). "Moreover, even assuming such error were otherwise plain, the Supreme Court has expressly held that a jury instruction that omits an element of the offense is subject to harmless error analysis." *Id.* That analysis for measuring harmlessness centers around "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Id.* at 584 (quoting *Neder v. United States*, 119 S. Ct. 1827, 1839 (1999)).[11]

---

[11]Alburtis contends that the *Neder* harmless error standard, which *Slaughter* applied, should not be utilized in the instant case because *Slaughter* involved an attempt to reverse a defendant's convictions while he merely seeks to vacate his sentence. This is a meaningless distinction and is foreclosed by our recent decision in *United States v. Green*, 246 F.3d 433 (5th Cir. 2001), which applied the *Neder* standard for harmless error to a defendant's *Apprendi* claim to vacate his sentence. Furthermore, we note that *Slaughter* itself applied the *Neder* standard in affirming the defendant's convictions and sentences. *Slaughter*, 238 F.3d at 584.

Having reviewed the record, we are convinced that it contains no evidence that could rationally lead the jury to a conclusion contrary to the quantities of drugs stated in the indictment. And as was the case in *Slaughter*, the jury had with it during deliberations a copy of the indictment setting forth the specific quantities of drugs that could support the sentences imposed by the district court. *See id.; United States v. Green*, 246 F.3d 433, 437 (5th Cir. 2001). Accordingly, the district court's failure to instruct was harmless, and we affirm Alburtis' sentences.

## III. CONCLUSION

For the foregoing reasons, Alburtis' motion to file a supplemental brief is GRANTED, and both Delgado's and Alburtis' convictions and sentences are **AFFIRMED**.