# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 08-50275
Summary Calendar

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 5, 2010

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALVIN W. BYRD, JR., also known as Alvin Byrd,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:07-CR-128-ALL

Before JOLLY, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Alvin W. Byrd, Jr., was convicted by a jury of one count of wire fraud, one count of interstate transportation of stolen property, and five counts of money laundering; he received concurrent sentences of 150 months for the wire fraud and money laundering counts and a concurrent 120-month sentence for the interstate transportation offense. Byrd was also ordered to pay a $100,000 fine and $271,403.33 in restitution and was ordered to forfeit a Hummer H2, $82,005.51 from an A.G. Edwards account, $5003.53 from a Fidelity account, and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

a money judgment of $192,886.87. He now appeals, *pro se*, his convictions and the sentences.

As an initial matter, Byrd moves to strike the Government's appellate brief because Byrd objected to the Government's second motion for an extension of time to file the brief. He also maintains that in the absence of the appellee's brief, he is entitled to an acquittal on all counts and immediate release. This motion is denied.

On appeal, Byrd argues that the evidence is insufficient to support his convictions. With respect to the wire fraud claim, he maintains that the testimony presented at trial establishes that he lacked any intent to defraud the victim, Kyle Hood, and that there was no evidence establishing that Hood or his company, Desktop Properties, LLC, suffered a loss. *See* 18 U.S.C. § 1343; *United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009). Byrd maintains that there was no evidence of the interstate element because there was no evidence that he knew an e-mail sent to an individual in the same city would cross state lines. Furthermore, he contends that the e-mail was not material because the parties had previously orally agreed to the terms set forth in the e-mail and because the agreement could have been completed without the use of an e-mail.

Byrd's contentions rely on the truth of his own trial testimony; however, the jury has the duty to weigh the evidence and assess witness credibility. *United States v. Delgado*, 256 F.3d 264, 273-74 (5th Cir. 2001). The jury heard evidence from the prosecution witnesses that Byrd had represented himself as a successful real estate investor and had encouraged Hood to engage in a transfer of funds outside of the escrow account by sending him an e-mail agreement. Byrd had written Hood a personal check on a closed account but stated in a written agreement that Hood could negotiate the check if Byrd failed to wire the necessary funds into the escrow by the time of closing. Witnesses testified that Byrd had attempted to obtain mortgages on Hood's property by falsely stating that he had a clear title to it. Considering the reasonable

inferences drawn from the evidence in the light most favorable to the verdict, a rational trier of fact could have found that the evidence established the elements of the offenses beyond a reasonable doubt. *See United States v. Lopez-Moreno*, 420 F.3d 420, 437-38 (5th Cir. 2005); *United States v. Richards*, 204 F.3d 177, 207 (5th Cir. 2000), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002).

Byrd's challenges to his interstate transportation and money laundering convictions arise from his assertion that he lacked intent to defraud and that thus he did not know that the funds were the proceeds of fraudulent activities. *See United States v. Griffin*, 324 F.3d 330, 351 (5th Cir. 2003); *United States v. Onyiego*, 286 F.3d 249, 253 (5th Cir. 2002). As the evidence was sufficient for a reasonable juror to find that Byrd knowingly engaged in the fraudulent attempts to engage in a real estate transaction, the jury could thus conclude that his procurement of numerous cashier's checks constituted an attempt to conceal the proceeds of his activities and that Byrd had sent some of these proceeds across state lines. *See Griffin*, 324 F.3d at 351; *Onyiego*, 286 F.3d at 253.

In conjunction with his allegations of innocence, Byrd contends that the district court lacked jurisdiction over his criminal case because he lacked any intent to send an e-mail across state lines. The interstate element is itself "'the linchpin for federal jurisdiction.'" *See Richards*, 204 F.3d at 207-08 (citation omitted). Byrd's challenge to his lack of intent is in fact a challenge to the sufficiency of the evidence. Byrd also contends that his indictment was fundamentally flawed because the allegations included were "implausible and impractical." The superseding indictment in the instant case was proper because it set forth the elements of the offenses, provided Byrd with information about the charges against him, and provided sufficient details to bar future prosecutions for the same conduct. *See United States v. McGilberry*, 480 F.3d 326, 329 (5th Cir. 2007). Byrd's dispute with the factual allegations in the indictment does not establish that the indictment was fundamentally flawed.

Byrd contends that his convictions should be overturned because FBI agents conducted an illegal search of his San Antonio hotel room and an illegal seizure of his personal property. Because he did not object to the legality of the search prior to trial, he may not raise the issue on appeal. *See* FED. R. CRIM. P. 12(b)(3)(C), (e); *United States v. Chavez-Valencia*, 116 F.3d 127, 129-30 (5th Cir. 1997).

According to Byrd, the prosecutor committed various forms of misconduct. He maintains that the prosecutor knowingly presented perjured testimony at trial because there was no documentary evidence to support Hood's claims of loss. Byrd has not shown that Hood's testimony was false or that the Government knew of the falsity of the testimony. *See United States v. O'Keefe*, 128 F.3d 885, 893-94 (5th Cir. 1997). Byrd's allegation that the United States Attorney engaged in selective prosecution fails because the Government has broad discretion in enforcing criminal laws and because there is no authority for Byrd's supposition that the prosecutor was required to believe Byrd's allegations of innocence. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). Byrd's conclusory assertion that the prosecutor showed bias by acting in a friendly manner toward Hood fails, as he has pointed to nothing in the record to indicate that the jury was affected by these actions.

In addition, Byrd contends that the Government presented various pieces of evidence at trial that were irrelevant or which reflected the prosecutor's biases. Because he did not object to the admission of any of this evidence, we review for plain error. *See United States v. Rogers*, 126 F.3d 655, 657 (5th Cir. 1997). Byrd has failed to show that the introduction of the majority of the evidence, much of which directly related to the Government's theory of the case, constituted error, much less a clear or obvious error. *See Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009); FED. R. EVID. 401, 402.

Byrd next asserts that the jury was incompetent to hear his case. He maintains that the panel consisted of individuals who lacked the educational and

economic expertise to understand the complex financial transactions in which Byrd engaged or Hood's motivation to use the federal courts as a collection "scam" to defraud Byrd out of his money and property. There is no indication that Byrd was deprived of a jury composed of a fair cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979). To the extent that Byrd is arguing that the jurors' limitations prevented them from believing Byrd, the jury's credibility finding was within its functions and did not constitute a ground for disqualifying the jurors. *See Delgado*, 256 F.3d at 273-74. Byrd asserts that the jury panel was irreparably tainted by "racially inflammatory outbursts" from a venire person; however, he provides no record support that this ever occurred. Our examination of the record shows that, although one venire person expressed his belief that Byrd would not be in court unless he had done something wrong, he was stricken for cause, and there is no indication that his statements caused the selected jurors to predetermine Byrd's guilt without application of the pertinent law to the facts. *See United States v. Flores*, 63 F.3d 1342, 1357 (5th Cir. 1995) (pretrial publicity).

Byrd maintains that the district court and the magistrate judges in his case engaged in a pattern of judicial bias. His complaints about adverse judicial rulings are not sufficient to require recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). The court's refusal to pre-judge the merits of Byrd's case at a pretrial hearing and insistence on holding a trial does not reflect a deep-seated antagonism against Byrd. *See Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003). The court's insistence during trial that Byrd answer a question during cross-examination, when read in the context of Byrd's evasiveness, did not constitute an intervention that would predispose the jury to find Byrd guilty; instead, the court was controlling witness interrogation. *See United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994); FED. R. EVID. 611(a). The court's statements at sentencing about the likelihood that the jury's verdict could be incorrect and about Byrd's work as a minister, when read in context, involved

a disagreement about what was proven at trial, which does not constitute an external bias. *See Liteky*, 510 U.S. at 555.

With respect to the order of forfeiture as encapsulated in the final judgment, Byrd contends that his conduct was not illegal and thus no forfeitable assets existed. Under 18 U.S.C. § 981(a)(1)(D)(vi), a defendant convicted of wire fraud may be required to forfeit "[a]ny property, real or personal which represents or is traceable to the gross receipts obtained, directly or indirectly, from [the] violation." The evidence at trial established that the assets and money ordered forfeited by the district court were in fact attributable to Byrd's fraudulent actions in inducing Hood to write him a check for $192,886.87.

In conjunction with his sentencing proceedings, Byrd asserts that his sentence was illegally entered because he was actually innocent. If his arguments are liberally construed, Byrd also contends that the district court's imposition of upward departures and an upward variance were procedurally improper because the district court failed to properly calculate the applicable guidelines range or sentenced him based on "clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). Because there was sufficient evidence to support Byrd's convictions, the district court could impose sentences against him and could rely upon the conclusions necessary from the jury's verdict to impose the sentence. Byrd's contention that the district court erred in calculating the pertinent loss amount because there was no evidence corroborating the allegations of loss and attempted loss set forth in the presentence report (PSR) is without merit, as the PSR bore sufficient indicia of reliability and Byrd failed to present evidence to establish that the information included in the PSR was "materially untrue, inaccurate or unreliable." *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998); *see also United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009). The court's oral and written reasons for Byrd's sentence show that it was concerned with the nature of Byrd's crimes, the similarity of the instant offense to Byrd's prior charged conduct, the need to protect the public, and the

seriousness of the offense. All of these are proper factors to consider when imposing a sentence. *See* 18 U.S.C. § 3553(a).

In sum, the district court did not abuse its discretion at sentencing. The sentence imposed "was reasonable under the totality of the relevant statutory factors." *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (quotation marks omitted); *see also United States v. Smith*, 417 F.3d 483, 492 & n.40 (5th Cir. 2005) (upholding departure of 120 months from a guidelines maximum of 41 months). The judgment of the district court should be affirmed.

In his record excerpts and reply brief, Byrd raises claims of ineffective assistance of his trial counsel. The purpose of the record excerpts is to provide record documents to assist this court in determining whether oral argument is necessary. 5TH CIR. R. 30.1.1. Byrd is not authorized to submit new arguments through documents that were not presented to the district court. Moreover, we will not consider arguments raised for the first time in a reply brief. *United States v. Prince*, 868 F.2d 1379, 1386 (5th Cir. 1989). To the extent Byrd has raised claims of ineffective assistance of counsel, the record is insufficiently developed to allow consideration at this time of such claims. *See United States v. Cantwell*, 470 F.3d 1087, 1091 (5th Cir. 2006).

AFFIRMED; MOTION TO STRIKE APPELLEE'S BRIEF AND FOR ACQUITTAL DENIED.