# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30650
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 22, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CARLOS L. LINARES,

Defendant-Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:15-CR-71-1

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

A jury convicted Carlos L. Linares of aiding and abetting the theft of government funds, in violation of 18 U.S.C. §§ 641 and 2 (Count One); failure to maintain an effective anti-money laundering program, in violation of 31 U.S.C. §§ 5318(h) and 5322 (Count Two); and obstruction of a proceeding before a federal agency, in violation of 18 U.S.C. § 1505 (Counts Three and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30650

Four).  On appeal, Linares argues that the evidence was insufficient to support his convictions.

Linares did not renew his motion for a judgment of acquittal at the close of all the evidence.  Accordingly, Linares has waived any objection to the denial of his motion, and our review is "limited to determining whether there was a manifest miscarriage of justice."  *See United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001).

With respect to Count One, the only argument that Linares raises is that the Government failed to sufficiently prove that he acted knowingly or with fraudulent intent.  To establish a violation of § 641, the Government was required to prove in relevant part that Linares stole or knowingly converted money or property to his use or the use of another and that he did so knowing that the money or property was not his and with the intent to deprive the owner of the use or benefit of the money or property.  *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTION (CRIMINAL), No. 2.27.

There was no dispute that from March 2012 through May 2013, Linares cashed more than 270 fraudulent and/or stolen United States Treasury checks, causing more than $1.6 million in loss.  At trial, the Government introduced evidence that Linares accepted, cashed, and deposited hundreds of thousands of dollars' worth of Treasury checks that no reasonable person would have accepted.  As an example, Linares cashed a check where the payee's name appeared as "%NA" with an address in Tampa, Florida.  For more than 100 of the checks Linares cashed, he failed to verify and/or retain a copy of the customer's identification.  Of the checks he verified, he often accepted IDs that were obviously fraudulent.

No. 16-30650

The Government presented sufficient evidence for the jury to find that Linares knew he was cashing fraudulent checks.[1]  Linares has failed to show that his conviction on Count One was a manifest miscarriage of justice. *Delgado*, 256 F.3d at 274.

As for Count Two, to establish a violation of §§ 5318 and 5322, the Government was required to prove, in part, that Linares did not have a written anti-money laundering program in place at his business; that the anti-money laundering program, if any, failed to meet certain minimum requirements outlined in the regulations; and that he acted willfully.  Because Linares operated a money service business, he was required to comply with the Bank Secrecy Act (BSA) and have an effective anti-money laundering program in place at his business.  *See* 31 U.S.C. §§ 5318(h); 5312(a)(2)(K).

The evidence at trial established that, from the date of the first Internal Revenue Service (IRS) compliance exam in 2010 through at least early 2014, Linares was never in compliance with the BSA.  The IRS examiner told Linares that he was subject to the BSA in 2010; Linares received written guidance from the IRS regarding his obligations under the BSA; and Linares certified in 2009 and in 2012 that he was aware that he was subject to the BSA.  The evidence provided a sufficient basis for the jury to conclude that Linares was fully aware of his obligations under the BSA and that he deliberately chose not to comply. Linares's claim to the contrary is without merit.  *See Delgado*, 256 F.3d at 274.

Count Three charged Linares with obstructing the 2010 IRS compliance examination.  Count Four was based on the 2013 exam.  To establish each offense, the Government was required to prove, in part, that Linares knew that

---

[1] The district court also provided the jury with this Circuit's pattern instruction on deliberate ignorance, and advised the jury, "you may find that the defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what otherwise would have been obvious to him."  *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTION (CRIMINAL), No. 1.37A.

a proceeding was pending before a federal agency and that he corruptly endeavored to influence, obstruct, or impede the due and proper administration of the law under which the proceeding was being conducted.

As relevant to Count Three, Linares failed to provide the IRS examiner with copies of any checks, but a later federal search led agents to recover numerous checks that would have been responsive to the examiner's request. Additionally, Linares told the examiner (1) that he did not cash checks worth more than $5,000, and (2) that he did not allow customers to cash more than $5,000 in checks at a time. The evidence proved that both statements were false.

Finally, as to Count Four, Linares refused to provide a second IRS examiner with copies of any checks or identification cards. But the federal search revealed that Linares had in his possession over 90 different checks and more than 150 different identification cards that he had not provided to the IRS. Linares told the IRS examiner (1) that he did not allow customers to cash more than $10,000 worth of checks in a single day; (2) that he "very rarely" allowed customers to cash more than one check at a time; and (3) that the vast majority of his customers were "regulars" who "lived or worked in the community." The evidence proved that all three representations were false.

Linares attempts to attack these convictions based on an alleged "language and comprehension barrier." Both IRS examiners testified that they had no trouble communicating with Linares and that he never gave them any indication that he did not fully understand them. Indeed, Linares admitted during questioning from his attorney that he frequently communicates with others in English and "understand[s] generally what's being said." Linares's attempt to attack the sufficiency of the evidence with respect to Counts Three and Four based on an alleged language barrier is without merit.

No. 16-30650

Based on the evidence presented, a reasonable jury was entitled to find that Linares intentionally lied to the IRS examiners and refused to provide them with relevant documents that they had requested in the course of their compliance examinations. Linares had failed to show that his convictions amount to "a manifest miscarriage of justice." *See Delgado,* 256 F.3d at 274.

The judgment of the district court is AFFIRMED.