DIC ENTERTAINMENT,
LP, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

International Alliance of Theatrical
and Stage Employees Local
839, Intervenor.

No. 99–1481.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 3, 2000.

Decided Jan. 12, 2001.

Jonathan M. Turner, pro hac vice, argued the cause for the petitioner. Lawrence J. Song was on brief.

Sonya Spielberg, Attorney, National Labor Relations Board, argued the cause for the respondent. Leonard R. Page, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Charles Donnelly, Attorney, National Labor Relations Board, were on brief.

Leo Geffner and Ira L. Gottlieb were on brief for the intervenor.

Before: GINSBURG, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

DIC Entertainment, LP (DIC), an animation production company, petitions for review of a decision of the National Labor Relations Board (Board or NLRB) finding that DIC committed an unfair labor practice when it failed to bargain with Local 839 of the International Alliance of Theatrical Stage Employees and Moving Pictures Operators (Union), the newly certified bargaining representative of DIC's production employees. *DIC Entertain-*

*ment, LP,* Case 31–CA–23986, 1999 WL 999622 (Oct. 29, 1999) (Decision and Order). DIC contends the Board's selection of voting eligibility criteria for the union representation election, *see DIC Entertainment, LP,* Case 31–RC–7705, 1999 WL 366721 (May 28, 1999) (order denying review) (Review Dec.), is inconsistent with past Board decisions. Because we conclude the Board did not deviate from its precedent, we deny DIC's petition for review. We further grant the Board's cross-application for enforcement.

DIC produces cartoons for videos and for television series. Its employees are hired for a fixed term and perform "preproduction" work for the actual animation. At the time of the representation proceeding DIC employees were working on "Sabrina," a 65–episode television cartoon series. During the proceeding DIC urged the Board's Acting Regional Director (Director) to limit voting eligibility to employees who worked on at least two productions for a minimum of 5 days during the year preceding the election, the eligibility criteria the Board had used for film production employees in *Medion, Inc.,* 200 N.L.R.B. 1013 (1972). The Director rejected DIC's suggestion and instead applied an eligibility formula which permitted voting by any employee who during the previous year had worked either for a minimum of five days on two productions or for a minimum of 15 days regardless of the number of productions. The Director emphasized that the Board had previously modified the *Medion* criteria in *American Zoetrope Productions, Inc. v. Association of Film Craftsmen,* 207 N.L.R.B. 621 (1973), to permit voting by any television production employee who had worked on two productions in the past year, regardless of the number of days, and pointed out that the Board there "not[ed] its 'obligation to tailor [its] general eligibility formulas to the particular facts of the case,' [207 N.L.R.B.] at 623, as well as its 're-

sponsibility to devise an eligibility formula which will protect and give full effect to the voting rights of those employees who have a reasonable expectancy of further employment.' *Id.* at 622." Review Dec. 3. Finding that "the record clearly establishes that the current employees have worked and will continue to work on the *Sabrina* project for a significant period of time," while "[i]n *American Zoetrope* and *Medion,* the employees worked for short-term, sporadic, and intermittent periods of time," the Director concluded that here a more inclusive formula was "necessary to avoid disenfranchising employees who have worked for a significant period of time, but only on one production." *Id.*

On review, the Board upheld the Director, concluding that DIC "ha[d] not shown that the [Director's] added alternative of requiring a minimum of 15 days work in the year prior to his decision is unreasonable under the circumstances present in this case." Review Dec. 1. In doing so, the Board stressed that it sought in its voting eligibility decisions "to be flexible in devising various formulas suited to unique conditions in the different entertainment industries where employees are often hired to help on a day-by-day or production-by-production basis, to afford employees with a continuing interest in employment the optimum opportunity for meaningful representation." *Id.* (citations omitted).

A union certification election was held on June 4, 1999, in accordance with the Board's eligibility formula. On June 25, 1999 the Union was certified as exclusive bargaining agent of DIC's production staff. In order to challenge the election, DIC refused to bargain with the Union and, as a result, the Board General Counsel issued a complaint on August 6, 1999, charging DIC with violating section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5).* As its defense

---

\* These two provisions make it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights [of employees as to organization,

DIC challenged the validity of the certification and the election. On October 29, 1999 the Board granted summary judgment to the NLRB's General Counsel on the grounds that the certification issue could have been and was litigated in the representation proceeding and that DIC neither offered newly discovered, previously unavailable evidence nor alleged any special circumstances that justified revisiting the certification. DIC petitioned the court for review.

 The Board exercises broad discretion when determining bargaining unit composition and we overturn the Board's exercise of discretion only if its action is unreasonable, arbitrary or unsupported by the evidence. *B B & L, Inc. v. NLRB*, 52 F.3d 366, 369 (D.C.Cir.1995). So long as the Board's decision is rational and in accord with past precedent, it will be upheld. *Id.* DIC contends that in choosing the eligibility formula here the Board impermissibly deviated from its precedent. We disagree.

 "Ordinarily the Board uses a simple formula to determine who is eligible to vote in a representation election: Employees in the bargaining unit are eligible to vote if they were employed on the date of the election and 'during the payroll period ending immediately prior to the Decision and Direction of Election.' " *Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d 1175, 1181 (D.C.Cir.2000) (quoting *Saltwater, Inc.*, 324 N.L.R.B. 343, 343 n. 1 (1997); citing *American Zoetrope*, 207 N.L.R.B. at 622). When employees are temporary or seasonal, however, the Board has devised alternative formulae which are calculated "to permit optimum employee enfranchisement and free choice, without enfranchising individuals with no real continuing interest in the terms and conditions of employment offered by the employer." *Trump Taj Mahal Casino Resort*, 306 N.L.R.B. 294, 296 (1992). In such cases the Board has generally applied a standard eligibility formula, limiting voting to those who "average four or more hours of work per week during the quarter preceding the election eligibility date." *B B & L, Inc. v. NLRB*, 52 F.3d at 369. Nevertheless, because of its acknowledged "obligation to tailor [its] general eligibility formulas to the particular facts of the case," *American Zoetrope Productions, Inc.*, 207 N.L.R.B. 621, 623 (1973), the Board has on occasion fashioned a variant formula which takes into account the nature of work performed in a particular industry or facility, as it did in *American Zoetrope* and *Medion*. See generally *B B & L, Inc.*, 52 F.3d at 370–71. The Board did so here consistently with those past cases. In fact, in *Juilliard School*, 208 N.L.R.B. 153 (1974), the Board devised for temporary stage production personnel a similar, yet more inclusive, formula, authorizing voting by any employee who had worked two productions for a total of 5 days over one year or at least 15 days over a 2–year period. *Cf. Sitka Sound Seafoods*, 327 N.L.R.B. No. 55, 1998 WL 876891 (1998), *affirmed*, *Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d 1175, 1182–83 (D.C.Cir.2000) (seasonal production workers at seafood processing plant deemed eligible if they worked 120 hours (15 8–hour shifts) in each of two of preceding three years).

Further, to the extent that the criteria used in *Medion* and *Zoetrope* indicate likelihood of future employment of "short-term, sporadic, and intermittent short term employees," the Director reasonably concluded that the longer-term DIC employees would have a greater expectation of continued employment. *See* Review Dec. at 3. We admit considerable doubt that the formula in any of these cases effectively identifies those employees "who have a reasonable expectancy of further employment with the Employer," as the Board has so repeatedly declared. *See, e.g.*, Re-

collective bargaining, etc.]," 29 U.S.C. § 158(a)(1), and "to refuse to bargain collectively with the representatives of his employees," *id.* § 158(a)(5).

view Dec. at 1–2; *Medion,* 200 N.L.R.B. at 1014; *American Zoetrope,* 207 N.L.R.B. at 622–23; *National Opinion Research Ctr.,* 187 N.L.R.B. 583, 585 (1970). Certainly the record below fails to demonstrate that DIC employees who worked 15 days in the previous year possessed an expectation of employment at DIC after their work on *Sabrina* concludes. Nevertheless, the validity of the Board's presumption of such expectation is not before us. DIC challenged the Board's decision on the sole ground that it deviates from Board precedent and did not question the rationale underlying the line of cases on which the Board relied. As we explained above, the Board's decision here squares with that line of cases, be they correctly decided or no. We therefore reject DIC's claim that the Board deviated from precedent.

For the reasons set forth above, DIC's petition for review is denied and the Board's cross-application for enforcement is granted.

*So ordered.*