**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 00-40322

————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE JESUS MENDOZA-OSEGUERA; GERARDO CASTILLO,

Defendants-Appellants.

Appeals from the United States District Court
For the Southern District of Texas
U.S.D.C. No. L-99-CR-276-1

August 9, 2001

Before EMILIO M. GARZA, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Jose Jesus Mendoza-Oseguera ("Mendoza") and Gerardo Castillo ("Castillo") were convicted of conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a), 846 and possession of more than five kilograms, that is, approximately 492 pounds of cocaine, with intent to distribute in violation of 18 U.S.C. § 2 and 21

---

[*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

U.S.C. §§ 841(a)(1), (b)(1)(a).  Each appeals his conviction and sentence.  We affirm.

**I**

Law enforcement personnel were aware that drug traffickers purchased supplies to package drugs from a supply store in Laredo.  While observing this store, two Laredo police officers witnessed Mendoza enter and later exit with two bags containing boxes.  The officers decided to follow Mendoza, which led them to a second building supply store.  Following Mendoza into the store, the officers passed Mendoza's truck and noticed that the bags from the first supply store contained boxes of "vacuum pack bags," an item frequently used to package drugs.  In the second store, Mendoza went straight to the aisle containing duct tape.  Mendoza purchased thirty rolls of duct tape, which he paid for in cash from a large roll of money.  This conduct amplified the officers' suspicions that drug trafficking was afoot.  The officers then followed Mendoza from the second store to a residence in Laredo.  Upon reaching the residence, Mendoza carried the items inside.  Believing the residence was a "stash house" for drugs, the officers requested continuous surveillance of the residence, which began between 11 a.m. and noon.

Mendoza left the residence twice, the first time alone and the second time with his co-defendant, Jose Antonio Zepeda-Martinez ("Zepeda").[1]  Apart from Mendoza and Zepeda, no one else was seen entering or exiting the house during the time the house was under surveillance.  Mendoza drove himself and Zepeda to an international bridge located between Mexico and the United States.  About four blocks from the bridge, Zepeda exited the truck and walked across the bridge.  Mendoza drove the truck across the bridge.  The officers found this conduct to be consistent with drug traffickers carrying large sums of money across the border, i.e., splitting the money between two

---

[1]     Zepeda pled guilty to count one.

persons who cross the border separately. A few hours later, the Customs Service informed the officers that the truck Mendoza was driving re-entered the United States. The officers then resumed their surveillance of Mendoza, following him to his apartment and later a truck stop. At the truck stop, Mendoza conversed with a Hispanic male who Mendoza drove to a warehouse. After remaining at the warehouse a short time, Mendoza left and drove back toward Mexico.

The officers did not follow Mendoza into Mexico, but instead returned to the residence where Mendoza had dropped off the packaging materials. Between 5:30 and 6 p.m., the officers knocked on the door of the residence, but no one responded. That evening, the officers learned that the truck Mendoza was driving had re-entered the United States. At approximately 7:45 p.m., Mendoza returned to the residence with Zepeda. Mendoza was seen leaving the house only once to obtain what appeared to be a cell phone from the truck. During this time, lights were on in the residence's third bedroom and the kitchen. The lights turned off at around 10 p.m. About an hour later, the officers again knocked on the door. Mendoza answered the knock and was greeted by the officers who requested Mendoza's permission to search the house for narcotics. Mendoza claimed that he did not live at the house, and was merely visiting with friends and watching a movie. Mendoza informed the police that he lived at another location, adding that there was a gun and ten thousand dollars in cash at that location. When asked about his whereabouts earlier in the day, Mendoza denied visiting either of the supply stores. Next, Castillo and Zepeda came to the door. The officers requested that they grant oral and written permission to search the house. Both individuals provided written permission, and Castillo also gave oral permission, stating that he lived elsewhere but occasionally stayed at the residence.

Upon searching the house, the officers found 221 bundles of cocaine (over 220 kilograms)

in the third bedroom, as well as a prescription bottle with Castillo's name on it in the closet of that bedroom, four food saver sealers, a box of unused duct tape, two bags of boxes containing vacuum pack bags, a box containing used duct tape, pieces of rope, pieces of canvas material, a utility knife, cocaine wrappers, disposable gloves, a chair, and a fan. In the utility room, there were trash bags, used wrappers, duct tape, a truck gas tank, tools, a box with bags, pinto bean sacks, a duffle bag, and broken padlocks. The garage contained a truck, an empty truck gas tank, gas cans, cans of grease, a roaster oven, and a roll of wrap. The following items were also obtained from the house: seven cash receipts for rolls of duct tape, boxes of food saver bags, a razor knife, Mendoza's phone receipts, a magazine receipt bearing Mendoza's name, a handwritten note signed by Mendoza, and a Federal Express air bill and receipt listing Mendoza as the recipient.

On this evidence and the testimony presented at trial, the jury convicted Mendoza and Castillo of conspiracy and possession with intent to distribute cocaine. Mendoza was sentenced to 360 months' imprisonment on each count to run concurrently, and five years' supervised release on each count to run concurrently. This sentence included a two level enhancement for obstruction of justice, and a two level enhancement for acting as a leader or organizer in the commission of the offense. Castillo received a sentence of 235 months' imprisonment on each count to run concurrently, and five years' supervised release on each count to run concurrently. Castillo was denied a two level sentence reduction for minimal participation.

**II**

Mendoza and Castillo each argue that there was insufficient evidence to convict them of the counts charged. We narrowly review sufficiency of the evidence claims, meaning "we will affirm if a rational trier of fact could have found that the evidence established the essential elements of the

crime beyond a reasonable doubt." *United States v. Davis*, 226 F.3d 346, 354 (5th Cir. 2000). "We review all evidence and any inferences therefrom in the light most favorable to the government," and we do not weigh the evidence or make credibility determinations. *United States v. Monroe*, 178 F.3d 304, 307 (5th Cir. 1999). However, "[i]f the evidence . . . gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, we must reverse the conviction, as under these circumstances a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).

For the government to demonstrate that Mendoza and Castillo participated in "a narcotics conspiracy, the government must prove beyond a reasonable doubt that (1) an agreement existed between two or more persons to violate narcotics laws; (2) each alleged conspirator knew of the conspiracy and intended to join it; and (3) each alleged conspirator voluntarily participated in the conspiracy." *United States v. Crain*, 33 F.3d 480, 485 (5th Cir. 1994) (citations omitted). The elements of the charge need not be proved by direct evidence, rather "[t]he agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy may all be inferred from 'the development and collocation of circumstances.'" *United States v. Delagarza-Villarreal*, 141 F.3d 133, 139 (5th Cir. 1997) (citations omitted).

The elements of a violation of 21 U.S.C. § 841 are "(1) knowledge, (2) possession, and (3) intent to distribute the controlled substance." *United States v. Delgado*, — F.3d —, No. 99-50635, 2001 WL 716951, at *6 (5th Cir. June 26, 2001). Possession may be actual or constructive. *See United States v. Steen*, 55 F.3d 1022, 1031 (5th Cir. 1995). "Constructive possession is defined as ownership, dominion, or control over illegal drugs *or* dominion over the premises where drugs are found. Either direct or circumstantial evidence can support a finding of possession." *Id.* (internal

quotations and citations omitted) (emphasis in original).

To obtain a conviction for aiding and abetting the possession of drugs "the government must establish that the defendant became associated with, participated in, and in some way acted to further the possession and distribution of the drugs." *Delgado*, 2001 WL 716951, at \*6. The government need not prove "actual physical possession." *Id*. Moreover, "'18 U.S.C. § 2 does not define a separate crime,' but rather provides another means of convicting someone of the underlying offense." *United States v. Sorrells*, 145 F.3d 744, 752 (5th Cir. 1998) (citations omitted).

## A

Mendoza claims that his purchase of the packaging materials was legal, and that he delivered the materials to Zepeda as a favor. He asserts that he did not exercise control over the house, that he was only in the house for brief periods of time, and that there was no evidence that he knew of the drugs. In short, Mendoza maintains that he was merely present in a location where drugs were discovered, but was not involved with the drugs. According to Mendoza, none of the evidence presented was sufficient to prove otherwise, and as a result, he avers that we must reverse his convictions. We disagree.

While "mere presence at the crime scene or close association with conspirators" by itself is not sufficient for a jury to infer a defendant's involvement in the conspiracy, "presence or association is a factor that, along with other evidence, may be relied upon to find conspiratorial activity by the defendant." *United States v. Gonzales*, 121 F.3d 928, 935 (5th Cir. 1997) (internal quotations and citations omitted). Here, the evidence presented, including the testimony of the officers conducting the surveillance and search, shows that Mendoza was more than merely present or simply associating with the members of the conspiracy. Mendoza purchased, in cash, large quantities of materials

commonly used to package drugs, carried these materials into the house the drugs were stored, and later lied to the officers about the purchase of the materials. After dropping the packaging materials off at the house, Mendoza left and returned to the house two times, suggesting that Mendoza came and went from the residence at his pleasure. On the same day he purchased the packaging materials, Mendoza traveled to Mexico twice, on one occasion following a pattern employed by drug traffickers bringing large sums of money into Mexico, i.e., dropping his co-defendant off before the international bridge and then crossing separately.

Mendoza was present in the house for approximately three hours after he returned from his second trip from Mexico. When the house was searched, officers found in various areas of the house materials to package and conceal drugs, some of which were the materials Mendoza purchased earlier in the day. Furthermore, in the third bedroom, which contained packaging materials, the police also discovered over 220 kilograms of cocaine. The door to this bedroom was open when the officers entered the house. Also, there was testimony that personal items belonging to Mendoza were found in the house, e.g., Mendoza's phone receipts, a magazine receipt bearing Mendoza's name, a handwritten note signed by Mendoza, and a Federal Express air bill and receipt listing Mendoza as the recipient.[2] This evidence was sufficient for the jury to find beyond a reasonable doubt the elements of the possession and the conspiracy charges. *See United States v. Onick*, 889 F.2d 1425, 1430 (5th Cir. 1989) (the existence of the defendant's receipts, papers, clothes, and prescription bottles at the house where the drugs were located was sufficient evidence for the jury to find that the defendant exercised dominion and control over the premises).

---

[2]     We do not discuss the evidence presented in the defendants' cases-in-chief, as the defendants moved for  judgment of acquittal at the end of the government's case-in-chief and the court deferred ruling on that motion. *See* Fed. R. Crim. P. 29(b).

**B**

Like Mendoza, Castillo claims that the jury lacked sufficient evidence to convict him of either of the counts charged. Castillo also tenders a "mere presence" argument. While the evidence against Castillo is less than that against Mendoza, it is enough for the jury to have found Castillo guilty of the counts charged.

Based on the surveillance of the officers, Castillo was left alone for over seven hours in a small, track house that contained over 220 kilograms of cocaine with a street value of up to $4.4 million. When officers knocked on the door of the house the first time, they received no answer. However, a few hours later when the officers knocked again Castillo emerged and consented to the search of the house. At this point, Castillo claimed that he did not live at the house, but admitted that he stayed there occasionally. A search of the house revealed drug packaging materials in three areas of the house. In the third bedroom, the door to which was open when the officers searched the house, the officers found over 220 kilograms of cocaine. Further, the officers discovered a medicine bottle with a label bearing Castillo's name in the bedroom where the cocaine was stored. Finally, at trial an officer, experienced in narcotics investigations, testified that this house was a stash house and that drug traffickers do not reveal the location of, or allow admittance to, a stash house by persons other than trusted members of the drug organization. *See United States v. Martinez-Moncivais*, 14 F.3d 1030, 1035 (5th Cir. 1994) (stating that "reasonable jurors could conclude that [a drug dealer] would not entrust millions of dollars . . . of drugs to an unknowing, innocent [individual,]" as there is a high risk that the individual would inform authorities or steal the drugs); *United States v. Martinez*, 190 F.3d 670, 677 (5th Cir. 1999) (finding it reasonable to infer defendant's knowledge of drugs when, *inter alia*, defendant was entrusted to transport, alone, over one million dollars worth

of drugs). Reviewing the evidence in the light most favorable to the government, we believe a reasonable jury could determine that Castillo was a member of the conspiracy.

Furthermore, as we have previously acknowledged, "[o]ften, the evidence that supports a conspiracy conviction also supports an aiding and abetting conviction." *Delgado*, 2001 WL 716951, at *6; *see Gonzales*, 121 F.3d at 936 (finding that the evidence presented supporting the defendant's conspiracy conviction was sufficient to affirm the defendant's aiding and abetting charge). That maxim rings true in this case. The evidence presented above makes out the elements of an aiding and abetting charge, i.e., a reasonable jury could have concluded that Castillo's presence at the house was to watch over the drugs, thus, aiding in the possession and distribution of the cocaine. Accordingly, we affirm Castillo's convictions.

## III

Both Mendoza and Castillo contend that the district court erred in the admission of evidence. Where a defendant has made a timely objection below, we review the district court's evidentiary rulings for abuse of discretion. *See United States v. Buchanan*, 70 F.3d 818, 832 (5th Cir. 1995). Any abuse of discretion, if found, is reviewed for harmless error. *See United States v. Moody*, 903 F.2d 321, 326 (5th Cir. 1990). Where the defendant fails to object below, we review the evidentiary ruling for plain error only. *See United States v. Hernandez-Guevara*, 162 F.3d 863, 870 (5th Cir. 1998).

## A

Mendoza asserts that the district court erred in allowing the government's witnesses to testify that Mendoza's actions were consistent with drug trafficking. We have previously held that "an experienced narcotics agent may testify about the significance of certain conduct or methods of

operation to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995); *see United States v. Armendariz-Mata*, 949 F.2d 151, 155 (5th Cir. 1991) (allowing an experienced drug enforcement agent to testify as to the meaning of "code words" and the significance of the defendant's actions). The admission of the officers' testimony as to the meaning of Mendoza's actions is not in error so long as it "was helpful and its relevance was not outweighed by the possibility of unfair prejudice or confusion." *United States v. Garcia*, 86 F.3d 394, 400 (5th Cir. 1996).

The record reveals that the officers testifying as to the consistency of Mendoza's actions with drug trafficking were experienced in narcotics investigations. Through their experience they had knowledge of the mode of operation of those involved in drug trafficking. Their testimony assisted the jury in understanding the significance of Mendoza's actions. *See United States v. Garcia*, 86 F.3d 394, 400 (5th Cir. 1996) (finding that the district court did not err in admitting agent's testimony that 166.9 kilograms of cocaine was indicative of a large drug trafficking organization or that such an organization used "car swaps," and "stash houses" because the "average juror" may not be aware of the import of this information); *see also United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997) (allowing a DEA agent to testify as to the meaning of drug jargon because it was "a specialized body of knowledge, familiar only to those wise in the ways of the drug trade, and therefore a fit for expert testimony."). Accordingly, the district court did not err in admitting this testimony.

Mendoza contends that the jury heard about an uncharged offense, i.e., that marijuana was present in the house. This contention is counterfactual. The record reflects that the court refused to allow the government to inquire about a detergent box, found in the bathroom, that contained both cocaine and marijuana.

Mendoza also alleges that the government's question as to whether he was selling contraband clothing was more prejudicial than probative, making its admission erroneous under Fed. R. Evid. 403. Mendoza did not object to this question below. Thus, we review it for plain error only. Mendoza testified on direct examination that he had come to Laredo to form a transportation company and to sell clothing. Mendoza's attorney inquired into Mendoza's clothing sales, asking about the shipments, and the quality and brands of the clothing. Mendoza testified that he was selling "Versace, Giorgio Armani, and Mossoni [sic]" clothing. This testimony was part of the defense's theory of the case that Mendoza had innocently come to Laredo for work and was just helping out a friend when he purchased the rolls of tape and the vacuum seal bags, knowing nothing about what his friend was doing inside the house. Mendoza testified that he was supporting himself by selling this clothing while trying to form a transportation company, and that his girlfriend was helping him sell the clothing. In answering the government's question on cross-examination that his girlfriend refused to help sell the clothing because it was contraband, Mendoza admitted that she refused to help him because the clothing was not "original." Hence, the government's questions on cross-examination referring to the clothing Mendoza soled as contraband were part of its attempt to impeach the credibility of Mendoza's testimony as to his purportedly lawful occupation in Laredo. Thus, the government's inquiries tended to show that Mendoza's testimony on direct examination was false and their admission was not erroneous.

Mendoza contends that the cumulative effect of all of this evidence rendered his trial fundamentally unfair. Because we find that the district court committed no error with respect to the admission of any of the evidence to which Mendoza points, we find this claim unavailing. *See United States v. Loe*, 248 F.3d 449, 465-66 (5th Cir. 2001) (rejecting the defendant's claim that the

cumulative effect of valid evidentiary rulings violated the defendant's Sixth Amendment rights).

**B**

Castillo asseverates that the district court erroneously admitted into evidence a prescription bottle that has a label containing his name on it, which was found in the bedroom with the cocaine. Castillo maintains that the label is hearsay. The Federal Rules of Evidence define hearsay as a "statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Where an out of court statement is admitted for another purpose it is not hearsay. *See United States v. Johnston*, 127 F.3d 380, 394 (5th Cir. 1997). The government contends that the bottle was not offered to show Castillo's ownership of the bottle, but to infer that because of its location Castillo had been in the bedroom with the cocaine. Castillo responds that such an inference is only possible if admitted for the truth of the matter asserted on the label, i.e., that it was Castillo's prescription bottle.

We encountered a similar hearsay question in *United States v. Hernandez*, 668 F.2d 824 (5th Cir. Unit B 1982). In that case, the defendant argued that the trial court erred in admitting a gun receipt into evidence. The receipt had been found in the boat's cabin in which the customs agents located drugs and guns. *See id.* at 825, 828. The defendant maintained that the receipt was offered to prove the receipt's assertion, i.e., that he had purchased the gun from a local gun shop. We rejected that argument finding that the gun's purchase, what the defendant paid for it, or even whether he owned the gun were not at issue. *See id.* at 828. Instead, we found that the receipt was introduced as a "circumstantial link" between the defendant and the contents of the cabin, and as such, was not hearsay. *See id.* Likewise, in the case *sub judice*, whether Castillo actually owned the bottle is not in issue. By virtue of his name being on the bottle, the government sought to infer that

-12-

Castillo had been in the room and knew of its contents. Accordingly, the evidence was not hearsay and the court properly admitted it. *See United States v. Arrington*, 618 F.2d 1119, 1126 (5th Cir. 1980) (concluding that utility bills found at defendant's residence were not offered to prove their contents but to establish that the residence was in fact the defendant's and thus the bills were not hearsay).

## IV

Mendoza and Castillo appeal several of the district court's sentencing decisions. We review the district court's application of the sentencing guidelines de novo. We review its findings of fact for clear error. *See United States v. McClatchy*, 249 F.3d 348, 360 (5th Cir. 2001). A factual finding is not clearly erroneous if it is plausible in light of the whole record. *See United States v. Brown*, 7 F.3d 1155, 1159 (5th Cir. 1993) (quotations and citation omitted).

## A

Mendoza challenges the district court's sentence enhancement for his role as an organizer, leader, manager, or supervisor pursuant to U.S.S.G. § 3B1.1(c). The district court's determination that Mendoza played such a role is a finding of fact. *See United States v. Perez*, 217 F.3d 323, 331 (5th Cir. 2000). Mendoza asserts only that there is "no sound basis" in the record for this conclusion. Our review of the record reveals otherwise. Mendoza admitted he brought Castillo in from California, he drove Castillo to the residence, and he purchased the packaging materials. Further, Mendoza drove Zepeda to Nuevo Laredo and back. These acts tend to show authority over others as well as participation in the planning of the offense. *See United States v. Jobe*, 101 F.3d 1046, 1065 (5th Cir. 1996) ("§ 3B1.1(c) requires that a defendant be the organizer or leader of at least one other participant in the crime and that he assert control or influence over at least that one

-13-

participant."); U.S.S.G. § 3B1.1 cmt. n. 4 (courts are to consider, *inter alia*, "the recruitment of accomplices, . . . the degree of participation in planning and organizing the offense, . . . and the degree of control and authority exercised over others" in determining whether this enhancement applies). Thus, the record supports the district court's finding that Mendoza played a supervisory role and the district court did not commit clear error in applying this enhancement.

Mendoza also contends that the district court erred in increasing his guideline sentence two levels for obstruction of justice under U.S.S.G. § 3C1.1. Section 3C1.1 provides for a two level increase where the defendant has "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, the prosecution, or sentencing of the offense." The district court's determination that Mendoza willfully obstructed or attempted to obstruct justice is a finding of fact. *See United States v. Odiodio*, 244 F.3d 398, 404 (5th Cir. 2001). The application of this sentencing enhancement is required when the district court concludes that the defendant has committed perjury. *See United States v. Gonzalez*, 163 F.3d 255, 263 (5th Cir. 1999). Mendoza maintains, as with his challenge to the district court's finding that he was a leader, that there is "no sound basis" in the record for the district court's conclusion. The district court found that Mendoza came to Laredo to engage in drug trafficking and his testimony to the contrary was perjury. Because Mendoza offered testimony that the jury necessarily disbelieved by virtue of its guilty verdict, the district court did not clearly err in finding that Mendoza committed perjury.

**B**

Castillo avers that the district court erred in denying his request for a reduction for his minimal participation. U.S.S.G. § 3B1.2 provides that a defendant may have his offense level decreased by four, if he is found to be a minimal participant or by two if he is found to be a minor participant. A

-14-

defendant bears the burden of demonstrating by a preponderance of the evidence that he is entitled to a sentencing reduction under this section. *See United States v. Brown*, 54 F.3d 234, 241 (5th Cir. 1994). To show that he was a minor participant, the defendant must demonstrate that he is "substantially less culpable" than the average participant. *United States v. Garcia*, 242 F.3d 593, 597-98 (5th Cir. 2001) *quoting* U.S.S.G. § 3B1.2 cmt. background. The district court's determination that the defendant was not a minor or minimal participant is a finding of fact reviewed for clear error. *See id.*

Castillo maintains that he is entitled to such a reduction because he provided nothing necessary or essential to the operation, instead he was merely present in the house with the cocaine and the drug paraphernalia. While Castillo provides us with a litany of what his role was not in this case, Castillo only addresses the fact that he was left alone for over seven hours with over 220 kilograms of cocaine, which had a street value of up to $4.4 million, by arguing that he was "merely present in the house." In convicting him, the jury rejected this argument. The district court concluded, based on the evidence offered at trial, that Castillo was not entitled to such a reduction. The record supports the district court's assessment. Castillo was given access to the stash house, something given only to trusted members of a drug trafficking organization. Further, as the only person in the house, he was in essence left to watch over a large amount of cocaine for a significant period of time, a role surely not peripheral to the advancement of the organization. *See United States v. Miranda*, 238 F.3d 434, 446-47 (5th Cir. 2001) ("[I]n order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity."); *see also United States v. Zuniga*, 18 F.3d 1254, 1261 (5th Cir. 1994) (denying a reduction for either minor or minimal participation where the defendant was "entrusted with four ounces of heroin and she arranged to be

-15-

available at the apartment to receive the cooperating individual's telephone call and to complete the actual delivery."); *United States v. Mena-Robles*, 4 F.3d 1026, 1038 (1st Cir. 2001) (defendant was not a minimal participant because "[i]n his role as a guard for the money, [the defendant] occupied a position integral to the completion of the deal."). Therefore, the district court did not err in declining to grant Castillo this reduction.

**V**

For the foregoing reasons, we AFFIRM both Mendoza's and Castillo's convictions and sentences.