**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 00-50966**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**DAVID MCINTOSH,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court**
**for the Western District of Texas**

---

January 16, 2002

Before DUHÉ, WIENER, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue is whether a recent amendment to the United States Sentencing Guidelines is a clarifying amendment and should be applied retroactively. David McIntosh also claims, *inter alia*: denial of due process and insufficient evidence. **AFFIRMED.**

I.

In 1993, McIntosh began employment at Austin Jones, established by Sidney Katchem (a co-defendant who testified on behalf of the Government) to solicit investments in oil and gas wells. McIntosh was an officer of the company; he maintained the bank account records and client files and was a signatory on the

bank accounts. And, along with Katchem, McIntosh developed a telephonic solicitation.

Potential investors were informed: that invested funds were fully guaranteed (that guarantee, however, depended upon Austin Jones' bank balance; according to Katchem, the balance was usually "not much"); that 100 percent "of [an investor's] funds would work for them" (in fact, fees and commissions were deducted, totaling, in some instances, between ten percent and one-third of the investment; overall, approximately $330,000 was deducted); that "they would have a continuing working interest in any wells that were drilled" (Katchem testified that the investors had no such interest); and that they were investing in a "low-risk" venture (Katchem admitted probably only one investor recouped her investment).

McIntosh was charged in a 25-count indictment with conspiracy, mail and wire fraud, interstate transportation of fraudulently taken property, and money laundering. Except for one wire fraud count, he was found guilty on all counts.

## II.

McIntosh claims: (1) ineffective assistance of counsel; (2) a rushed trial denied him due process; (3) insufficient evidence for his convictions for interstate transportation of fraudulently taken property and the related conspiracy count; (4) his sentence was based on facts not alleged in the indictment and proved to the

2

jury; (5) cumulative error; and (6) a reduced sentence is mandated by a very recent amendment to the Sentencing Guidelines, made effective post-sentencing.

## A.

McIntosh asserts his counsel were ineffective because of: lack of criminal trial experience; and not objecting to the presentence report. He did not raise this claim in district court.

"A claim of ineffective assistance of counsel generally cannot be reviewed on direct appeal unless it has been presented to the district court." *United States v. Lampazianie*, 251 F.3d 519, 523 (5th Cir. 2001). Accordingly, "we resolve claims of inadequate representation on direct appeal only in rare cases where the record allow[s] us to evaluate fairly the merits of the claim". *Id*. (internal quotation marks omitted; alteration in original).

The record is not sufficiently developed to address this claim. Of course, it can be raised in a 28 U.S.C. § 2255 motion.

## B.

According to McIntosh, the district court rushed his trial, denying him due process. He claims the court's "repetitive remarks ... to the jury ... were tantamount to a left-handed tacit impression that ... McIntosh ha[d] ... no defense".

McIntosh concedes he did not so object. Therefore, review is only for plain error. *See, e.g., United States v. Vasquez-Zamora*,

253 F.3d 211, 213 (5th Cir. 2001); *United States v. Marek*, 238 F.3d 310, 315 (5th Cir.) (en banc), *cert. denied*, 122 S. Ct. 37 (2001).

Plain error occurs where a "clear" or "obvious" error affects substantial rights. *See United States v. Olano*, 507 U.S. 725, 732-35 (1993); *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994), *cert. denied*, 513 U.S. 1196 (1995). Even then, we have discretion whether to correct the error and, generally, will not do so unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings". *Olano*, 507 U.S. at 736 (internal quotation marks omitted).

The trial began on a Monday. According to McIntosh, the district judge rushed trial for completion by Thursday evening. McIntosh first cites to the court's stating "we have got to finish ... the trial part of [this case] by Thursday ... evening, because" he had other matters scheduled for Friday. Contrary to the suggestion in McIntosh's brief, this statement was not made in the presence of the jury.

In the presence of the jury, the court stated:

> [I]t's absolutely necessary that we finish the trial of this case, *if possible*, by – the evidence by the close of business on this Thursday. That ... may mean that we have to maybe start a little earlier in the morning and/or go a little later in the evening if necessary....

(Emphasis added.) Prior to opening statements, the court also advised the jury: "So we *hope* to get all that done and have you

4

[the jury] deliberating on your verdict on or before Thursday afternoon of this week". (Emphasis added.)

The only other statement by the court in the presence of the jury that possibly relates to a Thursday completion is:

> So if everything – there's 25 counts in this indictment, and we have got to read through each one of those and tell you a little bit about the law as it affects those. So it's going to take a little while to go through that tomorrow morning, but I would *hope* that we could get everything done so that we – you would be deliberating by lunchtime tomorrow....

(Emphasis added.)

In **United States v. Anderson**, 528 F.2d 590, 592 (5th Cir.), *cert. denied*, 429 U.S. 837 (1976), the defendant, like McIntosh, maintained "the district court so hurried the trial along as to remove itself from the role of impartiality and create an impression of guilt in the minds of the jury". (Internal quotation marks omitted.) Our court held otherwise: "Taking in context the several [referenced] comments of the judge ... it does not appear that the court was doing anything more than shepherding along an uncomplicated trial of fairly basic issues and shows only judicial economy rather than prejudicial judicial intervention". **Id**.

Here, there was no error, much less plain error. As in **Anderson**, there was no prejudicial judicial intervention; the court was trying to complete the trial within a reasonable time frame. Indeed, its expressed desire to finish by a certain day was not an

5

ultimatum. Instead, it informed counsel at the beginning of trial that, should they not finish by Thursday, they could do so after taking a week off.

Moreover, McIntosh has not asserted that the court curtailed the examination of any witness. In addition, it gave the usual cautionary instructions to the jurors, such as: (1) they were to base their verdict "solely upon the evidence"; (2) McIntosh was "presumed by the law to be innocent"; and (3) they were not to "assume from anything [the district judge] may have done or said during the trial that [the district judge has] an opinion concerning any of the issues in this case".

## C.

McIntosh does not make a sufficiency challenge to all counts of conviction. For those contested (interstate transportation of fraudulently taken property, in violation of 18 U.S.C. § 2314, and the related conspiracy conviction), McIntosh moved for judgment of acquittal at the close of the Government's evidence. But, after presenting evidence, he did not again so move.

"[W]hen the defendant moves for judgment of acquittal at the close of the government's case in chief, and defense evidence is thereafter presented but the defendant fails to renew the motion at the conclusion of all of the evidence, he waives objection to the denial of his earlier motion." *United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989); *see United States v. Delgado*,

6

256 F.3d 264, 274 (5th Cir. 2001) (failure to renew motion at the close of all evidence "waived any objection to the sufficiency of the evidence").

Accordingly, "our review is limited to determining whether there was a manifest miscarriage of justice". *Delgado*, 256 F.3d at 274 (internal quotation marks omitted). That occurs only where "the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense [that is] so tenuous that a conviction would be shocking". *United States v. Cathey*, 259 F.3d 365, 368 (5th Cir. 2001) (internal quotation marks omitted; alteration in original).

1.

The elements for interstate transportation of fraudulently taken property are: (1) the interstate transportation of; (2) goods, merchandise, wares, money, or securities valued at $5,000 or more; (3) with knowledge that such items "have been stolen, converted, or taken by fraud". *Dowling v. United States*, 473 U.S. 207, 214 (1985); 18 U.S.C. § 2314. McIntosh asserts the evidence is deficient that he transported funds in interstate commerce and knew they were procured by fraud. The record is not devoid of evidence on this point, and such evidence is not tenuous, far from it.

To "constitute a violation of [18 U.S.C. § 2314], it is not necessary to show that [a defendant] actually ... transported

7

anything [himself]". *Pereira v. United States*, 347 U.S. 1, 8 (1954). *See* **Hubsch v. United States**, 256 F.2d 820, 822 (5th Cir. 1958) ("*causing* interstate transportation is made a crime under 18 U.S.C.A. § 2314") (emphasis added); *see also* **United States v. Newson**, 531 F.2d 979, 981 (10th Cir. 1976) ("There is no requirement of actual physical transportation by a defendant and it is sufficient that a defendant cause the instrument to be transported by the negotiation process.").

For each of counts 8-15, charging such transportation, the Government offered evidence that McIntosh caused funds to be transported in interstate commerce by investors to Austin Jones in Texas.* McIntosh developed the scripts to solicit investments, hired telemarketers, trained them to pitch these investments to the investors, and even made sales calls himself. Accordingly, these activities are evidence that McIntosh caused the invested funds to be transported in interstate commerce.

There is also evidence that McIntosh knew these funds were procured by fraud. He was an Austin Jones officer; he maintained the bank account records; the client files were under his oversight; and he was a signatory on the bank accounts. As stated,

---

*By count, the funds (checks) and their origination were: 8, $30,000 – Florida; 9, $5,000 – Tennessee; 10, $9,000 – California; 11, $18,000 - Kansas; 12, $5,000 - Maryland; 13, $36,000 – Georgia; 14, $157,402.17 – Colorado; and 15, $288,000 - Georgia.

he developed the fraudulent telephonic solicitation, and he used false names while making sales calls.

2.

McIntosh also asserts that the evidence was insufficient to support his conviction for conspiracy to transport in interstate commerce fraudulently taken property. Katchem's testimony constitutes evidence of the conspiracy, and this evidence is not tenuous.

D.

McIntosh's sentence was enhanced based upon his role as a leader and organizer and upon the total value of the fraudulently obtained funds. Although the sentence is still within the statutory range, he claims error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because these enhancement facts were neither alleged in the indictment nor proved to the jury beyond a reasonable doubt.

McIntosh raises this issue solely to preserve it for possible future review. He concedes it is foreclosed by our precedent: no *Apprendi* violation occurs where a fact used in sentencing that was not alleged in an indictment and proved to a jury does not increase the sentence beyond the statutory maximum. *See United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000), *cert. denied*, 531 U.S. 1182 (2001); *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000), *cert. denied*, 531 U.S. 1177 (2001); *United States v.*

9

***Meshack***, 225 F.3d 556, 576 (5th Cir. 2000), *cert. denied*, 531 U.S. 1100 (2001).

E.

McIntosh also claims cumulative error. He has not established *any* error; therefore, there is nothing to cumulate. *See* ***Yohey v. Collins***, 985 F.2d 222, 229 (5th Cir. 1993).

F.

Recent Amendment 634 to the United States Sentencing Guidelines became effective after McIntosh's sentencing. He asserts it lowers the base offense levels for money laundering convictions, and should be retroactively applied because, according to McIntosh, it is a clarifying amendment. *See, e.g.,* ***United States v. Anderson***, 5 F.3d 795, 802 (5th Cir. 1993) ("Amendments to the guidelines ... intended only to *clarify*, rather than effect substantive changes, may be considered even if not effective at the time of the commission of the offense or at the time of sentencing.") (emphasis in original), *cert. denied*, 510 U.S. 1137 (1994).

We agree with the Government that the amendment is not a clarifying, but is instead a substantive, amendment. Such an amendment is not applied retroactively. *See* ***United States v. Carrillo-Morales***, 27 F.3d 1054, 1067 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178 (1995); ***United States v. Aguilera-Zapata***, 901 F.2d 1209, 1213-14 (5th Cir. 1990).

10

Amendment 634 amended U.S.S.G. § 2S1.1 ("**Laundering of Monetary Instruments**") and deleted U.S.S.G. § 2S1.2 ("**Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity**"). UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL, SUPPLEMENT TO APPENDIX C 229-36 (Nov. 2001). Under the prior version of § 2S1.1, the base offense level was 23 if convicted under 18 U.S.C. §§ 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A), or 20 otherwise. U.S.S.G. § 2S1.1(a)(1) and (2) (Nov. 2000). Under the prior version of § 2S1.2, the base offense level was 17. U.S.S.G. § 2S1.2(a) (Nov. 2000).

The current version of § 2S1.1, a combination of the prior money laundering guidelines, is entitled "**Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity**", and provides a base offense level of either: (1) the "offense level for the underlying offense from which the laundered funds were derived"; or (2) eight. U.S.S.G. § 2S1.1 (Nov. 2001); UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL, SUPPLEMENT TO APPENDIX C 233 (Nov. 2001). The combining of §§ 2S1.1 and 2S1.2 and the resulting change in the calculation of the base offense level is a substantive change, not a clarification.

Moreover, the commentary to Amendment 634 does *not* state it is intended to clarify. Instead, the substantive intent is reflected in that commentary, which states in part:

> The amendment responds in several ways to concerns that the penalty structure existing

11

> prior to this amendment for such offenses did
> not reflect adequately the culpability of the
> defendant or the seriousness of the money
> laundering conduct because the offense level
> for money laundering was determined without
> sufficient consideration of the defendant's
> involvement in, or the relative seriousness
> of, the underlying offense.

UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL, SUPPLEMENT TO APPENDIX C 233-34 (Nov. 2001). As this language reflects, the amendment's purpose was to effect substantive changes in the punishment for money laundering offenses based upon the underlying conduct.

Further evidence that the sentencing commission did not intend Amendment 634 to be a clarifying change is that it is not included in the list of amendments to be applied retroactively. *See* U.S.S.G. § 1B1.10(c) (Nov. 2001).

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

12