United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 13, 2004**

Charles R. Fulbruge III
Clerk

REVISED MAY 27, 2004
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————

No. 03-20567
Summary Calendar

—————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES ELI HUFF, II,

Defendant-Appellant.

—————————

Appeal from the United States District Court
for the Southern District of Texas

—————————

Before GARWOOD, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant-defendant James E. Huff II (Huff) appeals his sentence.

Huff was charged in a one count information filed December 20, 2002 with violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) by having, on August 30, 2002, when he had previously been convicted of a crime punishable by imprisonment for a term of more than one year, possessed a firearm in and affecting interstate or foreign commerce. On the same day the government filed its notice of

intention to seek enhanced penalties under 18 U.S.C. § 924(e) on account of Huff's three prior convictions for violent felonies or serious drug offenses, namely his June 1982 Texas conviction for burglary of a habitation, his June 1987 Texas conviction for burglary of a habitation, and his December 1995 federal conviction for possession with intent to distribute and distribution of marihuana.  On December 30, 2002, Huff filed his written waiver of indictment and on January 31, 2003, he pleaded guilty to the information.  There was no plea agreement.  At the sentencing hearing on May 16, 2003, the district court, finding that Huff had three prior convictions for violent felonies or serious drug offenses as stated in the government's notice of intent to seek enhanced penalties, sentenced Huff in accordance with section 924(e) to 180 months' confinement and five years' supervised release, a $3,000 fine and a $100 special assessment.

## DISCUSSION

1.  Section 921(a)(20).

Huff's primary contention on appeal is that section 924(e) is inapplicable because two of the three necessary prior convictions relied on to invoke section 924(e), namely his two Texas convictions for burglary of a habitation,[1] are excluded by the last

---

[1]While § 921(a)(20)(B) also excludes state misdemeanors punishable by imprisonment for two years or less, Huff does not contend that either his 1982 or his 1987 Texas conviction falls within that exclusion.
Section 924(e)(1) provides in part that one "who violates

sentence of 18 U.S.C. § 921(a)(20) which provides:

> "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."[2]

"[T]he first clause" of this sentence "define[s] convictions, pardons, expungements, and restorations of civil rights by reference to the law of the convicting jurisdiction." *Caron v. United States*, 118 S.Ct. 2007, 2011(1998).

Huff was convicted by a Texas court in June 1982 of burglary of a habitation with intent to commit theft and was sentenced to ten years' probation; his probation was revoked in June 1987 and he was sentenced to seven years' imprisonment; on April 1, 1988, he was paroled from imprisonment; and on April 26, 1994, his parole term expired and he had completed and discharged his sentence.

In June 1987 Huff was again convicted by a Texas court of

---

section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, . . . shall be . . . imprisoned not less than fifteen years". Under § 924(e)(2)(B) "violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . (ii) is burglary, arson, or extortion." Huff does not contend that the Texas offense of burglary of a habitation does not meet the § 924(e) definition of "a violent felony."

Nor does Huff contend that his December 1995 federal drug conviction was not a conviction for "a serious drug offense" under § 924(e).

[2]Huff does not contend that his December 1995 federal drug conviction is affected by § 921(a)(20).

3

another burglary of a habitation with intent to commit theft and was sentenced to seven years' imprisonment; on April 1, 1988, he was paroled from imprisonment; and on April 26, 1994, his parole term expired and he had completed and discharged his sentenced.

(a) Individualized restoration

Huff claims that he received a "discharge certificate" on his completion of his parole term in April 1994 and that this certificate restored his civil rights for purposes of section 921(a)(20). However, Huff never produced any such certificate or any kind of copy of it.[3] Nor has Huff ever alleged an even paraphrased version of what the alleged discharge certificate actually said. The most he alleged was that it "did not expressly inform Mr. Huff that he could not possess firearms."[4] Huff cites

_____

[3]Huff was granted a continuance of the sentencing hearing to allow him further time to produce a copy of the certificate, but at the rescheduled hearing he was unable to do so and did not request any further continuance. He does not complain on appeal of any failure by the trial court to further continue sentencing or the like. His brief on appeal states that he "presents this argument [respecting restoration of civil rights by the alleged discharge certificate] in the event he receives a copy of the Discharge Certificate while this appeal is pending." However, Huff has never advised this court that he has received any such copy.

[4]As evidence that a discharge certificate existed at some time, Huff refers to a copy of a May 9, 2003 letter from the Texas Department of Criminal Justice which he filed below. The letter refers to Huff's parole (from his two Texas sentences) on April 1, 1988 and then states "[t]he original microfilm records cannot be located to reproduce a copy of the actual discharge certificate." The letter makes no reference to Huff's completion of his parole term or to April 1994. Huff's argument, however, is based on an alleged certificate issued to him when he completed his parole term in April 1994.

An April 16, 2003 supplement to the PSR states the probation

4

no Texas law, regulation or case authority indicating that the Texas Department of Criminal Justice (or the Texas Board of Pardons and Paroles) was authorized to grant him in particular, or any other convicted felon individually, on satisfactory completion of a term of parole and discharge of his sentence, any restoration of any civil rights which would not be restored anyway, on completion of his sentence apart from any such certificate, by operation of the general laws of Texas.[5]

---

officer contacted the writer of the May 3, 2003 letter and was informed that the intent of the letter was to notify "that the defendant has no further obligations to the State of Texas."

[5]A possible exception to this statement relates to the right to vote under the pre-1997 versions of § 11.002 of the Texas Election Code. As originally enacted effective January 1, 1985, § 11.002 provided that a person was qualified to vote if, among other things, the person

> "(4) has not been finally convicted of a felony or, if so convicted, has:
>> (A) received a certificate of discharge by the Board of Pardons and Paroles or completed a period of probation ordered by a court and at least two calendar years have elapsed from the date of the receipt or completion; or
>> (B) been pardoned or otherwise released from the resulting disability to vote;"

A 1987 amendment struck "calendar" from § 11.002(4)(A) (Acts 1987, 70th Leg. ch. 54 § 23); a 1991 amendment struck from § 11.002(4)(A) "Board of Pardons and Paroles" and replaced it by "pardons and paroles division of the Texas Department of Criminal Justice" (Acts 1991, 72nd Leg. ch. 16, § 6.01); and an amendment effective September 1, 1993 (Acts 1993, 73rd Leg. ch. 916 § 27) changed § 11.002(4)(A) to read as it did when Huff completed his parole in April 1994:

> "(A) been issued discharge papers by the pardons and paroles division or institutional division of the Texas Department of Criminal Justice, or by a federal or other state correctional institution or parole board, or completed a period of probation ordered by *any* court and at least two years have elapsed from the date of the

With respect to the disabilities or loss or curtailment of civil rights which Texas law generally provides for in respect to convicted felon (including those convicted of burglary of a habitation) we are aware of no distinction being made between those who complete their sentence to imprisonment without parole and those who are imprisoned and thereafter paroled and complete their

_issuance_ or completion; or"
Section 11.002(4) was next amended effective September 1, 1997 (Acts 1997, 75th Leg., ch. 850, § 1) to read as it presently does, namely:
   "(4) has not been finally convicted of a felony or, if so convicted, has:
      (A) fully discharged the person's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or
      (B) been pardoned or otherwise released from the resulting disability to vote;"
We are unaware of any Texas statute or regulation which at any relevant time authorized the Texas Department of Criminal Justice or any of its divisions or the Board of Pardons and Paroles to deny a discharge certificate to one who had completed his sentence (or sentences) or which granted discretion to issue such a certificate to some who had completed their sentence (or sentences) or their term of parole but to refuse to issue same to others who had done so. Nor are we aware of any Texas statute authorizing such a certificate to provide for the restoration of rights not otherwise provided for by statute. Tex. Gov't Code § 501.016 as in effect now and at the time Huff completed his parole in April 1994, provides that the Texas Department of Criminal Justice"shall prepare and provide an inmate with the inmate's discharge or release papers when the inmate is entitled to be discharged or released on parole, mandatory supervision, or conditional pardon." It specifies what "[t]he papers must contain" but includes nothing concerning restoration of rights or anything of that kind, and is facially applicable to all inmates. We are aware of no other Texas statute governing or providing for the issuance of such certificates of discharge or papers to inmates of the Texas Department of Criminal Justice or those who have been confined in or paroled from it.

6

sentence by satisfactorily completing their parole.

As the provisions of the first clause of the last sentence of section 921(a)(20) are in the nature of an exception or proviso to the otherwise applicable provisions of sections 922(g) and 924(e), Huff bore the burden of proof on any claim that the conviction had been expunged or set aside or that he had been pardoned for it, or had had his civil rights affirmatively restored by some individualized action particularly applicable to him. *See, e.g., United States v. Wise*, 221 F.3d 146, 148-49 (5th Cir. 2000). The district court correctly ruled that Huff did not satisfy that burden.

(b) Restoration of rights by generalized provisions

If the laws of the convicting jurisdiction provide that convicted felons generally (or a particular class of felons) do not lose their civil rights or do not do so once they have served their sentences, or at some specified time thereafter, then the civil rights of such felons are considered restored so that once restored they are, by virtue of section 921(a)(20), considered not to have been convicted for purpose of sections 922(g) and 922(e). The restoration can be express and general, as in the case of the provision of the Louisiana Constitution that "'[F]ull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense.'" *United States v. Dupaquier*, 74 F.3d 615, 617-18 (5th Cir. 1996). Texas, however,

7

has no such generalized express restoration of civil rights. *Dupaquier* at 618; *United States v. Thomas*, 991 F.2d 206, 214 (5th Cir. 1993). In that case, we look to whether under state law the convicted felons could exercise the rights to vote, serve on a jury or hold public office. In *Dupaquier*, citing *Thomas*, we explained:

> ". . . to determine whether state law had restored all or essentially all of Thomas' civil rights, we first looked to whether Texas law provided a *generalized restoration* of a felon's civil rights. *See Thomas*, 991 F.2d at 214. Only after finding that 'Texas neither actively nor passively restores all or essentially all of the civil rights of criminals' did we look to whether Texas restored to a felon 'the three civil rights considered key by the Ninth and Sixth Circuits – the right to vote, hold public office, and serve on a jury.' Having found that Texas provided neither a general restoration of a felon's civil rights nor a restoration of the three key rights, we held that Thomas had not had his civil rights restored within the meaning of section 921(a)(20) . . ." *Dupaquier* at 618.

Huff contends that when he completed his state sentences in April 1994, Texas law did not preclude – and hence, under *Thomas*, "restored" – his civil right to possess firearms. Huff correctly points out that until September 1, 1994, Texas law did "not prohibit possession of firearms by persons convicted of non-violent felonies." *Thomas* at 214.[6] Huff argues, without citation of

---

[6]Texas Penal Code former § 46.05(a) provided:
"(a) A person who has been convicted of a felony involving an act of violence or threatened violence to a person or property commits an offense if he possesses a firearm away from the premises where he lives."
By Acts 1993, 73rd Leg., ch. 900, § 1.01, effective September 1, 1994, former § 46.05 was redesignated § 46.04 and subsection (a) was amended to read as follows:
"(a) A person who has been convicted of a felony commits

8

authority, that his Texas burglary convictions were not for felonies "involving an act of violence or threatened violence against person or property" within the meaning of Texas Penal Code former section 46.05(a) and that his parole was completed and his sentence discharged in April 1994 before the Texas Penal Code was amended effective September 1, 1994, to bar possession of firearms by all felons (see note 6 *supra*). Huff correctly contends that insofar as concerns whether under Texas law his right to possess firearms was "restored" we look to the law in effect when the alleged restoration took place (April 1994) not to the limitations of later enacted law (Texas Penal Code§ 46.05(a), which came into effect September 1, 1994; note 6, *supra*). *United States v. Osborne*, 262 F.3d 486 (5th Cir. 2001).[7] We assume, *arguendo* only,

---

an offense if he possesses a firearm:
>    (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or
>    (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives."

[7]We note that under Texas Penal Code§ 46.04(a),as in effect after September 1, 1994 (see note 6 *supra*), Huff's 1982 and 1987 Texas convictions would apparently not prohibit his charged August 30, 2002 possession because at that time more than five years had elapsed since his completion of his sentence for those offenses in April 1994 and on August 30, 2002 the weapon was apparently possessed at his place of residence. Huff does not, however, make this argument, doubtless because even if the September 1, 1994 version of Texas Penal Code § 46.04(a) is looked to, nevertheless its permanent restriction of firearm possession to the premises

9

that Huff's 1982 and 1987 Texas felony convictions were not for crimes "involving an act of violence or threatened violence to a person or property" within the meaning of former Texas Penal Code § 46.05 (see note 6 *supra*) and that accordingly Huff's Texas law right to possess a firearm was not restricted, and was hence "restored," as of his discharge from parole in April 1994.[8] However, this avails Huff nothing, because even if Texas law at the relevant time did not restrict, and hence "restored," Huff's firearm possession on account of his 1982 and 1987 convictions, that does not suffice to constitute a restoration of his civil rights for purposes of the first clause of the last sentence of section 921(a)(20). We squarely so held in *Thomas* at 214-15.

In *Thomas* we held that since Texas law contained no provision which purported to provide a generalized restoration of "all or essentially all" of a felon's civil rights, we would look to whether under Texas law a convicted felon could exercise "the three civil rights considered key by the Ninth and Sixth Circuits – the rights to vote, hold public office, and serve on a jury." *Id*. at 214 (footnotes omitted). *See also Dupaquier* at 617-18.

---

where the felon lives might well activate the "unless" clause of the last sentence of § 921(a)(20). *See Caron; United States v. Daugherty*, 264 F.3d 513 (5th Cir. 2001).

[8]The government has cited no authority and made no reasoned argument concerning whether on Huff's completion of his 1982 and 1987 sentences in April 1994 Texas law as then in effect restricted his possession of firearms by virtue of either (or both) of those convictions.

Huff correctly points out that his right to vote has been "restored," since convicted felons are permitted to vote after discharge of their sentence. Tex. Elec. Code§ 11.002(4)(a) (see note 5 *supra*). However, that alone does not suffice. That is the plain import of *Thomas*, as we recognized in *Dupaquier* at 618.[9]

While Huff concedes that his conviction renders (and rendered) him ineligible to serve on a petit jury, Tex. Gov't Code § 62.102(7), he maintains that it does not preclude his grand jury service, and thus his right to serve on a jury has not been "essentially" denied. A fatal flaw in this argument is that since at least 1965 Texas law has also disqualified convicted felons from serving on grand juries. Tex. Code Crim. Proc. art. 19.08(4).

Huff further contends that his right to hold public office has been restored. He relies on the provision of Tex. Elec. Code § 141.001(a), in effect since January 1, 1986, stating that "[t]o be

---

[9]It also appears to us likely that in *Thomas* the defendant would have been entitled to vote at the time of challenged firearms possessions, which were in August and October 1991, *id*. at 208 & n.3, as he had been released from confinement in 1959, *id*. at 214 n.40, and presumably had completed his sentence more than two years before August 1991. *See* note 5 *supra*. *Thomas* appears to suggest that Texas law at the relevant time gave no *substantive* authority to Texas prison authorities to bestow any restoration of rights. *Id*. at 214, n.40. However, we observe that in *United States v. Maines*, 20 F.3d 1102, 1104 (10th Cir. 1994), the court cited the 1991 version of Tex. Elec. Code § 11.002(4)(A) and held that the defendant's right to vote had been restored, but observed in a footnote that "unlike the appellant in *Thomas*, Mr. Maines received a certificate of discharge, thus restoring his right to vote." *Maines* at 1104 n.3. We can find no reference in the *Thomas* opinion to the appellant there not being entitled to vote or not receiving a certificate of discharge.

11

eligible to be a candidate for, or elected or appointed to, a public elective office in this state, a person must: . . . (4) have not been finally convicted of a felony from which the person has not been pardoned or otherwise released from the resulting disabilities." Huff argues, without citation of authority, that merely because his rights to vote and to possess firearms in Texas had been restored he had been "otherwise released from the resulting disabilities" of his two Texas felony convictions for purposes of section 141.001(a)(4). We disagree. As noted, Huff has not been released from the disability, which results from his Texas felony convictions, to serve on either a Texas grand jury or a Texas petit jury.[10] We note that this is the implicit holding of at least one other court applying Texas law. *See United States v. Maines*, 20 F.3d 1102, 1104 (10th Cir. 1994) (holding that although Texas non-violent felon's right to possess arms and to vote in Texas had been restored, he was precluded from seeking and holding public office by Tex. Elec. Code § 141.01(4) as well as from jury service by Tex. Gov't Code § 61.102). *See also United States v. Woodall*, 120 F.3d 880, 882 (8th Cir. 1997) (following *Maines*).

Moreover, even if Huff were correct in his above noted argument that his right to hold office had been restored under Tex. Elec. Code § 141.001(a)(4) merely because his rights to vote and to

---

[10]Nor has any provision of Texas law, or any executive or administrative action, purported to generally release Huff of the disabilities resulting from those convictions.

possess arms had been restored, that still would not constitute a restoration of his civil rights under section 921(a)(20), because Huff's convictions disqualified him from both grand jury and petit jury service. Huff relies on *Dupaquier* where we held that the defendant's civil rights had been restored for purposes of section 921(a)(20) by virtue of the provision of the Louisiana Constitution that "'[F]ull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense,'" notwithstanding that the "Louisiana legislature has barred convicted felons who have not been pardoned from serving on juries." *Id*. at 617-18.[11] We held that "where, as here, a state's constitution declares full rights of citizenship to be restored upon a convicted felon's release from custody, we need not look further to determine that the restoration satisfies section 921(a)(20)." *Id*. at 618. While we plainly recognized that *Thomas* required a determination that "'Texas restored to a felon the three civil rights considered key by the Ninth and Sixth Circuits – the right to vote, hold public office, and serve on a jury,'" we distinguished *Thomas* because it imposed that requirement *only after* first determining that Texas did not provide any "*generalized restoration* of a felon's civil rights." *Dupaquier* at 618. That

---

[11]In *Dupaquier* Louisiana law also restored the felon's right to possess arms following 10 years after completion of sentence, a period which had elapsed at the time of the charged possession. *Id*. at 618.

13

distinction would have been unnecessary had we concluded that *Thomas* did *not* require restoration of *all* three of the key civil rights or that under *Thomas* restoration of the right to vote and to hold office (and to possess arms) would be sufficient for section 921(a)(20) even where there was neither any generalized restoration of the civil rights of felons nor a restoration of the right to serve on juries.  This is in accord with the law of other circuits. *See United States v. Horodner*, 91 F.3d 1317, 1319 (9th Cir. 1996) (where state law did not preclude felon's right to vote or to hold public office, but did preclude his jury service, his "civil rights were not substantially restored" and so he did not come within section 921(a)(20), even assuming that his right to possess firearms had been restored); *Maines* at 1104 (where right to vote and to possess firearms in Texas were restored, but not right to serve on jury or hold public office, section 921(a)(20) was not satisfied, applying Texas law and relying on *Thomas*; "[t]he Fifth and Sixth Circuits have deemed three civil rights to be fundamental in this context: (1) the right to vote; (2) the right to seek and hold public office; and (3) the right to serve on a jury. . . . We agree that these three civil rights are the fundamental civil rights in this context.  We further agree that, in order for a conviction to fall outside the scope of section 924(e)(1) enhancement, there must not only be a restoration of *all* these civil rights but also the restoration of the right to possess

14

firearms;" emphasis added); *United States v. Essig*, 10 F.3d 968-975-76 (3d Cir. 1993) (where right to vote and to hold public office have been restored, but not the right to serve on a jury, section 921(a)(20) is inapplicable; citing *Thomas* for the holding that "the right to serve on a jury is one of the three core civil rights which a person convicted of 'a crime punishable by imprisonment for more than one year' must have if he is to retain his right to bear a firearm or have it restored"). *See also Woodall* (applying Texas law and agreeing with *Maines* and *Thomas*).

Accordingly, Huff's 1982 and 1987 Texas convictions are not within section 921(a)(20) and are properly counted for purposes of section 924(e).

2. *Apprendi* and Section 942(e)

Huff argues for the first time on appeal that sentence enhancement provisions of section 924(e) are unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[12] Huff's argument lacks merit. *See United States v. Stone*, 306 F.3d 241, 243 (5th Cir. 2002).

3. Consecutive Sentences

---

[12]The information to which Huff pleaded guilty did not allege facts bringing into play § 924(e). When Huff pled, however, the government had filed its notice of intent to seek enhanced penalties under § 924(e), and at the Rule 11 hearing Huff was advised that he faced such enhanced penalties, and he admitted to the prior convictions and the resulting sentences stated in the government's notice. He never raised in the District Court either any challenge to the information or any challenge to the validity of § 924(e) or any contention under *Apprendi*.

15

Huff's remaining claim of error,[13] which he raises for the first time on appeal, is that the district court erred in ordering the instant 180 month sentence to run consecutively to Huff's twenty-four month sentence imposed on vacation of his supervised release. In December 1996 Huff was convicted in federal district court of possession with intent to distribute and distribution of marihuana and was sentenced to 174 months' imprisonment and five years' supervised release. His term of supervised release began in July 2000. Earlier on the same May 16, 2003 afternoon that Huff was sentenced for the instant section 922(g)(1) offense, the district court (in its Cause No. H-01-869) revoked his supervised release imposed for the 1995 conviction and sentenced him to twenty-four months' imprisonment (with no additional term of supervised release).[14] Shortly thereafter, the sentencing hearing

---

[13]Our rejection of Huff's challenges to the application and validity of § 924(e) renders immaterial his contentions that the district court erred in its application of U.S.S.G. §§ 2.K2.1(b)(4) and 2K2.1(b)(5) as Huff's 180 month sentence was the minimum authorized by § 924(e). *See* U.S.S.G. § 4B1.4.

[14]In the instant appeal Huff presents no challenge to the revocation of his supervised release or to the 24 month term of imprisonment imposed on such revocation (No. H-01-869 in the district court).
The revocation was based on Huff's August 30, 2002, violation of § 922(g)(1) as charged in the December 20, 2002 information to which he had pled guilty in January 2003. At the revocation hearing Huff pled true to that violation charged in the revocation petition. The other grounds of revocation charged were not reached. At the revocation hearing, defense counsel stated:
  ". . . all of the current Fifth Circuit case law says
  that the new sentence and this sentence would be imposed
  consecutively, that there is a split among the circuits
  on that issue. And some other circuits disagree with

16

on the instant section 922(g)(1) offense (No. H-02-742 in the district court) began, the same district judge presiding. At the conclusion of the sentencing hearing, the district court sentenced Huff to "180 months in prison to be served after the completion of your two-year sentence in Criminal No. H-01-869" (the sentence imposed on revocation of supervised release). The written judgment provides that the 180 month "term of imprisonment is ordered to run consecutive to and after the defendant's twenty-four (24) months term of imprisonment ordered in Docket Number 4:01CR00869-001."

On appeal Huff argues that the district court "erred by imposing consecutive sentences and not applying the methodology in U.S.S.G. § 5G1.3(b) or explaining if and how § 5G1.3 was employed" and "erred when it failed to explain if and how § 5G1.3(c) was employed," Huff explains that he "bases his contention in this argument on the interpretation of § 5G1.3, Application Note 6, as being instructive rather than mandatory and that the District Court retained discretion under § 5G1.3(c) to impose a 'reasonable incremental punishment' for the instant offense rather than a

_____

    that.
        And we'd ask the Court to at least consider imposing
    a partially concurrent sentence since this is the matter
    that caused him to come before the court on the new law
    violation and the penalty is extremely severe on the new
    law violation."
On inquiry by the district court, the government stated it had
nothing to say. The district court, without further comment, then
sentenced Huff to 24 months' confinement, stating "[t]his term will
be served consecutively to your sentence in criminal No. H-02-742,"
the instant § 922(g)(1) prosecution.

17

consecutive sentence," citing *United States v. Swan*, 275 F.3d 272 (3d Cir. 2002). Huff, however, states that he "concedes that this issue has been resolved contrary to his position, in *United States v. Alexander*, 100 F.3d 24 (5th Cir. 1996)" and that he "raises this argument to preserve it for possible further review," noting that "a split in the Circuit Courts exists on this issue."[15] Huff likewise concedes that his complaint that his 180 month sentence was made consecutive to the earlier imposed twenty-four month sentence on revocation of supervised release is raised for the first time on appeal and must hence be reviewed under the plain

---

[15]Huff also argues that U.S.S.G. § 7B1.3(f), providing "Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release."

is not applicable because when he was sentenced for revocation of supervised release he was not then serving any sentence of imprisonment. However, § 7B1.3 deals with the sentence imposed on revocation of supervised release, and the present appeal deals with the sentence imposed for the violation of § 922(g)(1), and the district court's sentence for that offense is plainly made consecutive to the previously imposed sentence on revocation of supervised release. Moreover, application note 4 to § 7B1.3 concludes by stating "[s]imilarly, it is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation or supervised release be run consecutively to any term of imprisonment imposed upon revocation," and we specifically noted in *Alexander*, *id*. at 26, that U.S.S.G. § 5G1.3 application note 6, providing that the sentence for an offense committed while on supervised release or probation should be consecutive to that imposed on the revocation of the supervised release or probation, expressly references that statement of policy in § 7B1.3.

error standard of review. FED. R. CRIM. P. 52(b).[16] Huff is correct that his arguments were considered and rejected by this court in *Alexander*, and likewise that there is a split in the circuits on this issue. *Alexander*'s holding is in accord with that of the First, Eighth and Ninth Circuits, while the Second, Third and Tenth follow the view urged by Huff. *See Swan* at 277-78 & n.3. *Alexander*, of course, binds us. If that were all there were to it, we would simply reject Huff's argument because, there being no "error," by virtue of *Alexander*, there could be no "plain error." *Johnson v. United States*, 117 S.Ct. 1544 (1997).

Unfortunately, by reason of developments not called to our attention by either party, the matter is somewhat more complicated than that. The guidelines in effect at the time of Huff's sentencing in May 2003 were those of the Guidelines Manual which became effective November 1, 2002, and the provisions of application note 6 to section 5G1.3 and of section 5G1.3(c) (and of section 7B1.3(f) and its application note 4) were all the same as those which were in effect at the time of the sentencing considered in *Alexander*. However, though not mentioned by either party, effective November 1, 2003,[17] after Huff's sentencing, the

_____

[16]Huff's brief correctly states that in the district court he "failed to specifically cite § 5G1.3 and object to the consecutive sentence and preserve error for *de novo* appellate review."

[17]Huff's initial brief in the appeal was filed October 27, 2003; the government's brief was filed November 26, 2003; Huff filed no reply brief.

19

Sentencing Commission, by its amendment 660, among other things, deleted application note 6 to section 5G1.3 and in essence replaced it with a new application note 3(c), reading as follows:

> "(C) <u>Discharged Terms of Imprisonment Resulting from Revocation of Probation, Parole or Supervised Release</u>. – Subsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked. Consistent with the policy set forth in Application Note 4 and subsection (f) of § 7B1.3 (Revocation of Probation or Supervised Release), the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation."

Amendment 660 also changed section 5G1.3(c) by adding just after "case," in its introductory phrase "In any other case", the words "involving an undischarged term of imprisonment." The amendment also made a presently irrelevant change in section 5G1.3(b), replaced application notes 2 through 5 and 7 (as well as 6) to section 5G1.3, and added a new section 5K2.23. No change was made in section 7B1.3(f) or its application note 4. The Commission stated its reasons for amendment 660 in four paragraphs, only the second of which addresses the changes relevant to the matter at hand, and it states:

> "Second, this amendment addresses how this guideline applies in cases in which an instant offense is committed while the defendant is on federal or state probation, parole, or supervised release, and has had such probation, parole, or supervised release revoked. Under this amendment, the sentence for the instant offense may be imposed concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment;

20

however, the Commission recommends a consecutive sentence in this situation. This amendment also resolves a circuit conflict concerning whether the imposition of such sentence is required to be consecutive. The amendment follows holdings of the Second, Third, and Tenth Circuits stating that imposition of sentence for the instant offense is not required to be consecutive to the sentence imposed upon revocation of probation, parole, or supervised release. *See United States v. Maria*, 186 F.3d 65, 70-73 (2d Cir. 1999); *United States v. Swan*, 275 F.3d 272, 279-83 (3d Cir. 2002); *United States v. Tisdale*, 248 F.3d 964, 977-79 (10th Cir. 2001)."

As Huff has not argued in this court that his case is controlled by new application note 3(c) to section 5G1.3(c), nor even mentioned the existence of the amendments effective November 1, 2003, we would be justified in giving no consideration to those matters. However, even if we considered them, Huff would not be entitled to relief on this appeal.

It would seem clear that if Huff had been sentenced on or after November 1, 2003, the district court would have had discretion to make its 180 month sentence run concurrently (or partially concurrently) with the previously imposed twenty-four month sentence for supervised release revocation (although the Commission recommends that the sentence imposed be consecutive to that for the revocation). Further, it seems likely that, if at such a post October 31, 2003 sentencing the district court had, over proper objection, imposed consecutive sentences because it believed, by virtue of *Alexander*, it was required to do so, then, on proper appeal urging that that was error, we would vacate and

21

remand for resentencing.  But Huff was sentenced in May 2003, and section 1B.11(a) of the Guidelines, as in effect then and now, directs that the Guidelines Manual in effect at the date of sentencing, be used.[18]  Nevertheless, we have held that on direct appeal we may "consider" an amendment to commentary of the relevant guideline, even though the amendment did not become effective until after sentencing, "if it is intended to clarify application of a guideline" and "'was not intended to make any substantive changes to it [the guideline] or its commentary.'" *United States v. Gross*, 26 F.3d 552, 555 (5th Cir. 1994).  Where we have done this we have generally pointed to express language on the part of the Commission that the amendment is a clarifying one.  *See, e.g., United States v. Aguilera-Zapata*, 901 F.2d 1208, 1213 (5th Cir. 1990); *United States v. Maseratti*, 1 F.3d 330, 340 (5th Cir. 1993); *United States v. Anderson*, 5 F.3d 793, 801-02 (5th Cir. 1993).[19]  We have stated that such an "amendment is not controlling, [but] we consider it as

---

[18]An exception is provided for the situation where use of the date of sentencing manual would violate the *ex post facto* clause, in which event the manual at the date of the offense is to be used. § 1B.11(b)(1).

[19]In some instances we have considered an amendment clarifying without expressly pointing to any statement by the Commission that clarification was intended.  In such instances we have indicated that the amendment merely confirms the result we would reach apart from it.  *See United States v. Nissen*, 928 F.2d 690, 694 (5th Cir. 1991) ("The amendments made to this provision buttress our analysis"); *United States v. Evbuumwan*, 992 F.2d 70, 74 (5th Cir. 1993) (relying on decisions of this court rendered prior to the sentencing being appealed).

evidence of the Sentencing Commission's intent behind" the original guideline." *Anderson* at 802. *See also, e.g., Gross* at 553 (postsentencing clarifying amendment to commentary confirms meaning we would otherwise give to preamendment commentary). On the other hand, we have held that if an amendment which becomes effective postsentencing is substantive it may not be considered on direct appeal. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995). We have held that the failure of the Commission to state that a postsentencing amendment is intended to be clarifying is evidence that it is substantive and hence inapplicable. See *United States v. McIntosh*, 280 F.3d 479, 485 (5th Cir. 2002); *United States v. Davidson*, 283 F.3d 681, 684 (5th Cir. 2002). *See also United States v. Caldwell*, 302 F.3d 399, 418 (5th Cir. 2002). When an amendment addresses a matter as to which it notes that the circuits are in conflict we have suggested that this is an indication the amendment is not clarifying. *Davidson* at 684-85. However, we have held such an amendment clarifying where it is expressly stated to be so and it essentially confirms our reading of the commentary without the amendment. *Gross*. That the amendment is not listed in U.S.S.G. § 1B.10(c) as being retroactively applicable may be an indication that it is substantive. *McIntosh* at 485; *Davidson* at 685. However, the amendment held in *Gross* to be clarifying appears not to have been so listed. *See also United States v. Capers*, 61 F.3d 1100, 1109

23

(4th Cir. 1995) (a clarifying statement can be retroactive though not listed in section 1B.10).

That an amendment alters the language of commentary to a guideline rather than the language of the guideline itself may be some indication that it is not substantive. *Cf. United States v. Camacho*, 40 F.3d 349, 354 (11th Cir. 1994) (amendment is substantive where it amends guideline rather than commentary). *But see Capers* at 1112 (suggesting that this makes no difference since commentary is binding).

Some circuits have held that amendments which alter existing law in the circuit are for that reason substantive; other circuits have held to the contrary. *See, e.g., Capers*, 61 F.3d at 1108-12 (reviewing authorities, and holding postsentencing commentary amendment relied on by defendant on appeal to be substantive, despite Commission's statement that it was clarifying, because amendment "cannot be reconciled with circuit precedent"); *United States v. Saunders*, 67 F.3d 855, 856-57 (9th Cir. 1995) (postsentencing amendment to commentary relied on by defendant on appeal described by Commission as clarifying and resolving circuit split held to be clarifying despite changing circuit law; dissenting opinion would hold it substantive because it changes circuit law, *id*. at 857-58). *See also United States v. Kissick*, 69 F.3d 1048, 1053 (10th Cir. 1995) (indicating that postsentence amendment to commentary described by Commission as clarifying would

be treated as substantive where it would overrule existing circuit precedent); *United States v. Diaz*, 245 F.3d 294, 300-05 (3rd Cir. 2001).

To sustain Huff's argument on appeal concerning his 180 month sentence being made consecutive to his twenty-four month sentence for supervised release revocation we would at least have to hold that the relevant portion of amendment 660 is clarifying. But we would have to do more than that, because Huff's objections, not raised at the sentencing, are reviewed only under the plain error rule (and because Huff has not ever even mentioned the noted amendment effective November 1, 2003). This requires not only that there be "error" but also, among other things, that the error be "plain" in the sense of "clear" or "obvious," *United States v. Olano*, 113 S.Ct. 1770, 1777 (1993), as judged by the state of the applicable law when the reviewing court acts. *Johnson,* 117 S.Ct. at 1549. As applicable here, that means that it must *now* be clear – plain or obvious – that the relevant portion of amendment 660 is merely clarifying. We hold that it is not clear, plain or obvious that the relevant part of amendment 660 is merely clarifying. While the amendment is of commentary, it is not listed in section 1B.10(c), and, more significantly, the Commission has not expressly stated that it is clarifying (although it does describe two other changes made by amendment 660 as clarifying) and it is directly inconsistent with the law clearly established in this circuit by

*Alexander*.  Accordingly, Huff has not shown plain error.  Moreover, under FED. R. CRIM. P. 52(b) relief even for error which is "plain" is not to be granted unless the failure to do so would seriously affect the fairness, integrity or public reputation of judicial proceedings.  *Johnson* at 1550.  Even if the relevant portion of amendment 660 were clarifying so that on a remand the district court could exercise discretion to make the 180 month sentence wholly or partially concurrent with the twenty-four month sentence, there is nothing in the record to suggest that the district court would likely do so and it is clear that under amendment 660 making the sentence entirely consecutive is not merely permitted but is what the Commission "recommends."  Hence for this reason also Huff has not met the standard for plain error relief.

Accordingly, the judgment of the district court is

AFFIRMED.